UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| VITALY BORKER,<br><br>               Petitioner,<br><br>v.<br><br>WARDEN BOWERS,<br><br>               Respondent. | Civil Action No. 24-10045-LTS |

## MEMORANDUM IN SUPPORT OF RESPONDENT'S MOTION TO DISMISS

Vitaly Borker—an inmate at FMC Devens—filed this petition under 28 U.S.C. § 2241, which vests courts with authority to issue writs of habeas corpus to individuals "in custody in violation of the Constitution or laws or treaties of the United States." Borker claims that his custody violates the First Step Act (FSA), which allows eligible prisoners to earn "time credits" by participating in "recidivism reduction" activities, and thereby expedite their transfer from prison to prerelease custody or early supervised release. 18 U.S.C. § 3632(d)(4). According to Borker, the FSA requires the Bureau of Prisons (BOP) to start awarding inmates time credits immediately after they have been sentenced—including while they remain detained and *await transfer* to their designated BOP facility. But the BOP's regulations only allow an inmate to start earning time credits after he "arrives or voluntarily surrenders at the designated Bureau facility where the sentence will be served." 28 C.F.R. § 523.42(a). Borker therefore claims that the BOP's regulation violates the FSA and that its application here has improperly denied him time credits, which—if awarded and applied—would expedite his release date.

The FSA does not, however, mandate that the BOP allow an inmate to start earning time credits immediately after he has been sentenced. The statute *precludes* an inmate from earning

time credits *before* he has been sentenced, such as while in pretrial detention. 18 U.S.C. § 3632(d)(4)(B)(ii). But that prohibition does not impose a converse requirement—i.e., it does not *mandate* that an inmate begin earning time credits *immediately after* he has been sentenced. The FSA remains silent as to when the BOP must begin offering recidivism reduction activities to eligible inmates, such that they can begin earning time credits. The agency's regulation reasonably sets that starting point as the date when an inmate arrives (or voluntarily surrenders) at the BOP facility where he will serve his sentence. The BOP has thus properly calculated Borker's time credits beginning with his arrival in BOP custody. And, in all events, the FSA does not permit Borker to obtain the relief that he seeks at this juncture, given that he remains a medium risk to recidivate. Accordingly, the Court should dismiss the petition.

## I.  BACKGROUND

### A.  Legal Framework

The FSA directed the BOP to develop "a risk and needs assessment system" to, among other things, "determine the recidivism risk of each prisoner," and "determine the type and amount of evidence-based recidivism reduction programming that is appropriate for each prisoner and assign each prisoner to such programming accordingly." 18 U.S.C. § 3632(a). To that end, the BOP developed the Prisoner Assessment Tool Targeting Estimated Risk and Needs (PATTERN), which measures an inmate's recidivism risk and provides opportunities for inmates to reduce their risk scores. Doc. No. 12 (Declaration of A. Bourke) ¶ 9. "The four PATTERN risk scores are minimum, low, medium, and high-risk." *Walsh v. Boncher*, 652 F. Supp. 3d 161, 164 (D. Mass. 2023). The BOP also developed the Standardized Prisoner Assessment for Reduction in Criminality (SPARC-13), which it uses to identify an inmate's criminogenic needs. Doc. No. 12 ¶ 9. The agency then assigns inmates to appropriate evidence-based recidivism

reduction (EBRR) programming and productive activities (PAs) based on their identified risk and needs.  *Id.*

The FSA also directed the BOP to "provide incentives and rewards for prisoners to participate in and complete [EBRR] programs"—including by, among other things, awarding time credits.  18 U.S.C. § 3632(d).  The statute specifies that eligible prisoners "shall earn 10 days of time credits for every 30 days of successful participation in [EBRR] programming or [PAs]."  *Id.* § 3632(d)(4)(A)(i).  Moreover, an eligible prisoner "determined by the [BOP] to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in [EBRR] programming or [PAs]."  *Id.* § 3632(d)(4)(A)(ii).  Such time credits "shall be applied toward time in prerelease custody or supervised release."  *Id.* § 3632(d)(4)(C).  And, in general, once an eligible prisoner "has earned time credits . . . in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment," and satisfied certain other requirements, the BOP will transfer the prisoner into prerelease custody or early supervised release.  18 U.S.C. § 3624(g)(1).

All that said, the FSA also includes several exceptions and preconditions.  For example, the statute provides that "[a] prisoner may not earn time credits . . . for an [EBRR] program that the prisoner successfully completed . . . during official detention prior to the date that the prisoner's sentence commences under section 3585(a)."  *Id.* § 3632(d)(4)(B)(ii).  Section 3585(a), in turn, states that "[a] sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served."  18 U.S.C. § 3585(a).  The FSA thus prohibits an inmate from earning time credits before he has

been sentenced, even if he remains detained during that time. The statute, however, remains silent as to when the BOP must begin offering EBRR programs and PAs to eligible inmates, such that they can begin earning time credits. The agency has therefore promulgated a regulation providing that "[a]n eligible inmate begins earning FSA Time Credits after . . . the date the inmate arrives or voluntarily surrenders at the designated Bureau facility where the sentence will be served." 28 C.F.R. § 523.42(a).

Moreover, the FSA only allows eligible prisoners to receive time credits, and defines eligible prisoners for prerelease custody as those who have—among other things—been determined "to be a minimum or low risk to recidivate pursuant to the last 2 reassessments of the prisoner." *Id.* § 3624(g)(1)(D)(i)(I). And it defines eligible prisoners for supervised release as those who have—among other things—been determined "to be a minimum or low risk to recidivate pursuant to the last reassessment of the prisoner." *Id.* § 3624(g)(1)(D)(ii). Thus, if a prisoner seeks early entry into prerelease custody or supervised release based on the application of earned time credits, he must first have been deemed a "minimum" or "low" risk to recidivate.

**B. Factual Background**

In May 2022, a federal grand jury indicted Borker on charges of mail fraud and wire fraud. *USA v. Borker*, No. 1:22-cr-00273-JSR (S.D.N.Y.) (ECF No. 10). Borker pleaded guilty to Count Two for violating 18 U.S.C. § 1343 (Wire Fraud). *Id.* (ECF No. 35). And, on April 28, 2023, the United States District Court for the Southern District of New York sentenced Borker to 30 months' imprisonment with three years of supervised release. *Id.*; *see also* Doc. No. 1 at 1. As a result, the following month, the district court revoked Borker's supervised release in connection with a previous crime and sentenced him to 14 months' imprisonment—to run consecutively with the 30-month sentence for his most recent conviction. *USA v. Borker et al.*,

No. 1:17-cr-00391-PGG (S.D.N.Y.) (ECF No. 152). Before and immediately after sentencing, Borker remained detained at the Metropolitan Detention Center (MDC) in Brooklyn, New York, in the custody of the U.S. Marshals Service. Doc. No. 1 at 1; Doc. No. 12 ¶ 20.

Two months later, Borker was transported to and arrived at FCI Fort Dix (the BOP facility where he was initially designated to serve his sentence) on July 18, 2023. Doc. No. 1 at 1; Doc. No. 12 ¶¶ 20, 23. The BOP subsequently conducted Borker's first risk assessment and designated him as a "Medium" risk for recidivism. Doc. No. 12 ¶ 23. A few months later, Borker was transferred to FMC Devens, where he currently remains detained. *Id.* ¶ 24. At Borker's second risk assessment, the BOP again designated him as a "Medium" risk. *Id.* And, in September 2023, Borker completed his portion of the SPARC-13, thus allowing the BOP to assign him to EBRR programs and PAs based on his identified risk and needs. *Id.* ¶ 25. Since then, Borker has participated in these programs and activities, and earned 40 days of FSA time credits. *Id.* ¶ 26. Currently, the BOP projects that Borker's release date will be April 2, 2025, accounting for "good conduct time." *Id.* ¶ 7.

## II.    LEGAL STANDARD

A district court should dismiss a pleading, such as this petition, under Federal Rule of Civil Procedure 12(b)(6) when the underlying allegations fail "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). In evaluating plausibility, this Court conducts a "two-step" inquiry. *Araujo v. UGL Unicco-Unicco Operations*, 53 F. Supp. 3d 371, 378 (D. Mass. 2014) (citation omitted). "First, the court must distinguish 'the complaint's factual allegations (which

must be accepted as true) from its conclusory legal allegations (which need not be credited).'" *Id.* "Second, the court must determine whether the factual allegations are sufficient to support 'the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* If the well-pleaded factual allegations—accepted as true—still fail to state a claim that is both "actionable as a matter of law and 'plausible on its face,'" the Court should dismiss the complaint. *Bartlett v. Dep't of Treasury*, 922 F. Supp. 2d 156, 158 (D. Mass. 2013) (quoting *Iqbal*, 556 U.S. at 678).[1]

"Ordinarily," in ruling on a motion to dismiss, "a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001). But there is an "exception 'for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint.'" *Id.* (citation omitted). This Court and others have thus routinely considered declarations by BOP officials in resolving motions to dismiss habeas petitions in this context, without converting them into motions for summary judgment. *See, e.g.*, *Walsh*, 652 F. Supp. 3d at 165 (considering

---

[1] The Supreme Court once noted in dicta that a "response to a habeas corpus petition is not like a motion to dismiss" under Rule 12(b)(6) because "[t]he procedure for responding . . . is set forth in the habeas corpus statutes," which, if inconsistent with the Federal Rules, take "precedence over the Federal Rules." *Browder v. Dir., Dep't of Corr. of Illinois*, 434 U.S. 257, 269 n.14 (1978). But that was before the enactment of the *Rules Governing Section 2254 Cases in the United States District Courts*, which now permit the assigned judge to order "an answer, *motion*, or other response" to a habeas petition, Habeas Rule 4 (emphasis added), including "a motion to dismiss," Advisory Committee Notes to Habeas Rule 4. This Court has therefore explained that "[m]otions to dismiss habeas petitions pursuant to Fed. R. Civ. P. 12(b)(6) are not inconsistent with habeas rules." *Delgado v. Dennehy*, 503 F. Supp. 2d 411, 413 (D. Mass. 2007). Moreover, district courts can apply the *Rules Governing Section 2254 Cases* to petitions brought under § 2241, such as this one. *See* Habeas Rule 1(b).

"declaration authored by . . . a BOP correctional programs officer" in support of "the motion to dismiss"); *Nygren v. Boncher*, 578 F. Supp. 3d 146, 149 n.1 (D. Mass. 2021) ("the court will accept the Declaration without converting the motion to dismiss into a motion for summary judgment").

**III.   ARGUMENT**

    **A.  The BOP has properly calculated Borker's FSA time credits.**

Borker argues that the BOP must award him FSA time credits for the 81 days that he spent in official detention between his sentencing (on April 28, 2023) and his arrival at the BOP facility where he was initially designated to serve his sentence (on July 18, 2023). *See* Doc. No. 1 at 10–16.  The BOP's implementing regulation, however, provides that an eligible inmate may only begin earning time credits "after" he "*arrives or voluntarily surrenders at* the designated Bureau facility where the sentence will be served."  28 C.F.R. § 523.42(a) (emphasis added).  The BOP has thus properly calculated his eligibility to earn FSA time credits as beginning with his arrival at FCI Fort Dix.  Doc. No. 12 ¶ 25; *see also Walsh*, 652 F. Supp. 3d at 165 ("On February 10, 2022, the petitioner arrived at FMC Devens, his designated facility, and at this point became eligible to earn FSA credits.").

Borker counters that the BOP's regulation contravenes the FSA itself.  Doc. No. 1 at 11.  But, as support, he merely points to the provision of the statute that *prohibits* inmates from earning time credits before their sentencing date.  *Id.*  This subsection provides that "[a] prisoner may *not* earn time credits . . . for an [EBRR] program that the prisoner successfully completed . . . during official detention prior to the date that the prisoner's sentence commences under section 3585(a).  18 U.S.C. § 3632(d)(4)(B)(ii) (emphasis added).  Section 3585(a), in turn, provides that "[a] sentence to a term of imprisonment commences on the date the defendant is received in

custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). Thus, taken together, these provisions *prohibit* an inmate from earning time credits *before* he has been sentenced and taken into custody for transportation to the facility where he will serve his sentence. They do not, however, establish the converse proposition—namely, that an inmate *must* be allowed to earn time credits *immediately after* his sentencing.

In fact, the FSA contains no mandatory language concerning *when* the BOP must begin offering and assigning EBRR programs and PAs to eligible inmates, such that they can begin earning time credits. To be sure, Borker cites a few out-of-district cases in which the deciding courts identified mandatory language contained in another subsection of the FSA. *See* Doc. No. 1 at 14. Specifically, this subsection provides that an eligible prisoner "who successfully completes [EBRR] programming or [PAs], *shall* earn time credits as follows," and then specifies that "[a] prisoner *shall* earn 10 days of time credits for every 30 days of successful participation in [EBRR] programming or [PAs]." 18 U.S.C. § 3632(d)(4)(A) (emphasis added). But this subsection merely sets forth mandatory instructions concerning the *method for calculating* time credits. It does not, by contrast, set forth mandatory instructions concerning *when* the BOP must begin offering and assigning EBRR programs and PAs to eligible inmates.

The BOP's regulation thus constitutes a proper exercise of its rulemaking authority to implement and administer the FSA. After all, the FSA directed the BOP to identify and assign prisoners to appropriate EBRR programs and PAs based on their specific risks and needs "as part of the intake process," and established time credits as an incentive for inmates to participate in those EBRR programs and PAs. *See* 18 U.S.C. §§ 3632(a), (d)(4). But, of course, the agency cannot feasibly identify an inmate's risk or needs "as part of the intake process" until the inmate

has arrived in BOP custody and undergone the PATTERN and SPARC-13 assessments. *See* Doc. No. 12 ¶¶ 9, 21.  Indeed, the FSA defines the types of prisoners eligible for transfer to prerelease custody or early supervised release as those who, among other things, have "earned time credits *under the risk and needs assessment system* developed" by the BOP.  18 U.S.C. § 3624(g)(1)(A) (emphasis added).  It thus makes sense that an inmate cannot earn time credits until after the BOP has identified the inmate's risk level and needs.  *See Mohammed v. Warden Stover, FCI Danbury*, No. 3:23-CV-757 (SVN), 2023 WL 7300592, at *3 (D. Conn. Nov. 6, 2023) ("Petitioner was not entitled to earn FSA time credits prior to October 4, 2022, when she completed her BOP risk and needs assessment upon arrival at FMC Carswell.").

      Moreover, if Borker's position were correct, then inmates would need to begin earning time credits immediately after their sentencing, at a time when they may remain in USMS custody, including at non-BOP facilities.  Yet it would prove difficult, if not impossible, for the BOP to force non-BOP facilities to offer and assign qualifying EBRR programs and PAs—let alone track an inmate's participation in such programs and PAs before he arrives at a BOP facility.  *See Szanyi v. Pullen*, No. 3:22-CV-1253 (KAD), 2023 WL 1108469, at *2 (D. Conn. Jan. 30, 2023) ("The regulations specifically exclude time an inmate is not confined in a BOP facility from the calculation.").  Similarly, to earn FSA time credits, Borker would in all events need to show that he actually and successfully *participated* in EBRR programs and PAs while detained at MDC Brooklyn between his sentencing (on April 28, 2023) and his arrival at FCI Fort Dix (on July 18, 2023).  *See* 18 U.S.C.§ 3632(d)(4).  He has not, however, made that showing.  Nor could he.  *See* Doc. No. 12 ¶ 22.

### B. Borker is not currently eligible for prerelease custody or early supervised release.

Even if the Court were to find that Borker could have earned time credits for the time spent participating in EBRR programs or PAs while at MDC Brooklyn, it should still dismiss the petition because Borker is not currently eligible for the relief that seeks. To be sure, the FSA allows an eligible inmate to earn and apply time credits toward prerelease custody or early supervised release. 18 U.S.C. § 3632(d)(4)(C). But to be "eligible" for and receive such relief, an inmate must first be deemed a "minimum" or "low" risk to recidivate. *Id.* § 3624(g)(1)(D)(i)(I). Thus, because the BOP has so far deemed Borker to be a "Medium" risk for recidivism, he is not currently eligible for the relief that he seeks via habeas. *See, e.g., Holmes v. Sage*, No. 22-cv-923, 2022 WL 2791755, at *2 (M.D. Pa. July 15, 2022) ("Because Holmes does not have a low or minimum risk [rating] . . . the BOP may not apply credits for successfully completed programs [and thus] we cannot grant Holmes the relief he seeks").

## IV. CONCLUSION

The Court should deny the petition.

Respectfully submitted,

JOSHUA S. LEVY
Acting United States Attorney

Dated: February 16, 2024          By:   */s/ Michael L. Fitzgerald*
MICHAEL L. FITZGERALD
Assistant United States Attorney
U.S. Attorney's Office
1 Courthouse Way, Ste. 9200
Boston, MA 02210
(617) 748-3266
michael.fitzgerald2@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants: **Vitaly Borker, # 64386-054, Devens Federal Medical Center, Inmate Mail/Parcels, P.O. BOX 879, AYER, MA 01432.**

*/s/ Michael L. Fitzgerald*
MICHAEL L. FITZGERALD
Assistant U.S. Attorney

Dated: February 16, 2024