UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| VITALY BORKER,<br><br>            Petitioner,<br>v.<br><br>WARDEN BOWERS, FMC Devens,<br><br>           Respondent. | Civil Action No. 24-CV-10045-LTS |

## DECLARATION OF AMBER BOURKE

I, Amber Bourke, do hereby declare and state as follows:

1. I am currently employed by the Federal Bureau of Prisons ("BOP") of the United States Department of Justice, as the Case Management Coordinator ("CMC") at the Federal Medical Center in Devens, Massachusetts ("FMC Devens"). I have held this position since March 2020, and I began working for the BOP in October 2012.

2. The CMC's Office provides oversight of case management activities within the institution by working directly with the unit teams to ensure compliance with policies and procedures of the Correctional Programs Division. Areas covered by the Correctional Programs Division include inmate program reviews/progress reports, custody classification reviews, First Step Act ("FSA") eligibility reviews, Second Chance Act reviews, Residential Re-Entry ("RRC") and home confinement recommendations, Central Inmate Monitoring, the Inmate Financial Responsibility Program, Admission and Orientation, the Victim/Witness Program, and Adam Walsh Act compliance. I have access to BOP files maintained in the ordinary course of business, including inmate central files and records on the BOP's computerized database, SENTRY.

1

3. I make this Declaration in connection with the petition for writ of habeas corpus filed by Vitaly Borker, Reg. No. 64386-054 ("Petitioner"). Petitioner seeks FSA time credits from April 28, 2023, to July 18, 2023.

**Petitioner's Sentence**

4. On April 24, 2019, in Case No. 17-CR-391, the U.S. District Court for the Southern District of New York sentenced Petitioner to a 24-month term of incarceration with a 3-year term of supervised release for Conspiracy to Commit Mail Fraud and Wire Fraud, in violation of 18 U.S.C. § 1349; Mail Fraud, in violation of 18 U.S.C. § 1341; and Wire Fraud, in violation of 18 U.S.C. § 1343. *See* Sentence Monitoring Computation Data for Vitaly Borker, Reg. No. 64386-054, p. 4-5, a true and accurate copy of which is attached hereto as ***Exhibit 1***. Petitioner served this sentence and was released to supervision on November 12, 2020. *See id.* at 5 ("ACTUAL SATISFACTION DATE: 11-12-2020").

5. On April 28, 2023, in Case No. 22-CR-273, the U.S. District Court for the Southern District of New York sentenced Petitioner to a 30-month term of incarceration with a 3-year term of supervised release for Wire Fraud, in violation of 18 U.S.C. § 1343. *See id.* at 2.

6. As a result of this conviction, on May 17, 2023, Petitioner's supervision was revoked in Case No. 17-CR-391. *See id.* at 1 ("DATE SUPERVISION REVOKED: 05-17-2023"). Petitioner was sentenced to a 14-month term of imprisonment, consecutive to the sentence imposed in Case No. 22-CR-273. *See id.* at 1.

7. Petitioner's two terms of imprisonment were aggregated pursuant to 18 U.S.C. § 3584(c) ("Multiple terms of imprisonment ordered to run consecutively or concurrently shall be treated for administrative purposes as a single, aggregate term of imprisonment."). Accordingly, Petitioner is deemed to be serving a 44-month term of imprisonment with a

3-year term of supervision. *See id.* at 3. His projected release date, via good conduct time provided by 18 U.S.C. § 3624(b), is April 2, 2025. *See id.* ("PROJECTED SATISFACTION DATE: 04-02-2025").

8. Petitioner's offenses are not among the enumerated ones in 18 U.S.C. § 3632(d)(4)(D), which render prisoners ineligible to earn FSA time credits if their current conviction involves certain crimes. Petitioner is therefore eligible to earn FSA time credits. A true and accurate copy of Petitioner's FSA Time Credit Assessment, dated February 3, 2024, is attached hereto as ***Exhibit B***.

**FSA Background**

9. Pursuant to the First Step Act's directive in 18 U.S.C. § 3632, the BOP developed tools to assess an inmate's risk of recidivism and their criminogenic needs. The Prisoner Assessment Tool Targeting Estimated Risk and Needs ("PATTERN") is a system designed to accurately measure an inmate's change in recidivism risk during incarceration and provide opportunities for inmates to reduce their risk scores. The Standardized Prisoner Assessment for Reduction in Criminality ("SPARC-13") identifies thirteen needs areas which are dynamic factors that can be targeted to reduce an inmate's risk of recidivism. Prisoners are then assigned to evidence-based recidivism reduction ("EBRR") programming and productive activities ("PAs") based on their identified risk and needs. *See* 18 U.S.C. § 3632(a)-(b).

10. Inmates who successfully participate in EBRR programming or PAs are entitled to earn 10 days of time credits for every 30-days of successful programming.[1]  *See* 18 U.S.C. § 3632(d)(4)(A)(i).

---

[1] "Successful participation" includes being on a waiting list for a recommended program.

11. Inmates deemed to be at a low or minimum risk of recidivism, and who, over two consecutive assessments, have not increased their risk of recidivism, shall earn 15 days of time credits for every 30-days of successful programming. *See* 18 U.S.C. § 3632(d)(4)(A)(ii).

12. Inmates ordinarily receive their initial risk assessment and needs assessment within 28-days of their arrival at their designated institution. *See* BOP Program Statement 5410.01, CN-2, *First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4)*, § 5.[2] For consistency purposes and to eliminate any discrepancy based on the exact timing of their risk and needs assessments and assignment to EBRR/PAs within the first 28 days, BOP allows inmates to begin earning credits immediately upon arrival to their designated institution if they are not otherwise ineligible.

13. Inmates have their risk and needs reassessed at each regularly scheduled Program Review throughout the remainder of their incarceration, and Unit Team's recommendation for appropriate EBRR and PAs changes accordingly. *See id. See also* 18 U.S.C. § 3632(a)(4)-(5). Program Reviews occur approximately every 180 days unless an inmate is within one year of release, in which case they occur every 90 days. *See* 28 C.F.R. § 524.11(a).

14. Even if an inmate has his/her risk assessment and/or needs assessment outside of the normal Program Review timeframe, BOP uses standardized assessment periods so inmates can be neither advantaged nor disadvantaged by the exact timing of when staff complete assessments. The standardized assessment periods are 28-days for initial classification; 180-days; and 90-days when inmates are within one year of release. An inmate who receives two consecutive low/minimum risk assessments within two standardized

---

[2] Available at https://www.bop.gov/policy/progstat/5410.01_cn2.pdf.

assessment periods will begin earning 15-credits for every 30-days of programming at the end of the second assessment period.

15. Inmates will generally not be considered to be "successfully participating" in programming if they are: 1) in the Special Housing Unit for disciplinary reasons; 2) designated outside of the institution (e.g. in the hospital, on a furlough, etc.); 3) temporarily transferred to another government agency (e.g. on writ, for service of a state sentence, etc.); 4) placed in a mental health or psychiatric hold; or 5) "opting out" (i.e. choosing not to participate in recommended EBRR and PA). *See* 28 C.F.R. § 523.41(c).

16. Additionally, an inmate is considered to be opting out if the inmate fails to complete any portion of the SPARC-13 needs assessment system. *See* BOP Program Statement 5410.01, CN-2, *First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4)*, § 3. Specifically, an inmate must complete the appropriate instrument on the BOP's inmate computer system ("TRULINCS") to assist in determining whether the inmate has a Need in the areas of Anger/Hostility, Antisocial Peers, Cognitions, and Family/Parenting. *See Initial Review of the SPARC-13 Needs Assessment System*, p. 8 (March 2022).[3]

17. An inmate may not earn time credits prior to the enactment of the First Step Act or during official detention prior to the date the prisoner's sentence commenced. *See* 18 U.S.C. § 3632(d)(4)(B). In fact, BOP regulations provide that an eligible inmate begins earning FSA time credits after the date the inmate arrives at the designated BOP facility where the sentence will be served, as inmates do not receive their statutorily required risk or needs

---

3 Available at https://www.bop.gov/inmates/fsa/docs/bop_fsa_needs_validation_report_2021.pdf (last visited January 2, 2023).

assessments, nor assignment to appropriate programming, prior to that time. *See* 18 U.S.C. § 3632(a); 28 C.F.R. § 523.42(a).

**Petitioner's FSA Calculation**

18. As previously noted, Petitioner was sentenced in his current aggregated term of incarceration on April 28, 2023. *See* **Exhibit A**. He is not entitled to FSA time credits prior to that date. *See* 18 U.S.C. § 3632(d)(4)(B)(ii).

19. Petitioner was initially designated to the Federal Correctional Institution in Fort Dix, New Jersey ("FCI Fort Dix"), where he arrived on July 18, 2023. A true and accurate copy of the Admission-Release History for Vitaly Borker, Reg. No. 64386-054, is attached hereto as **Exhibit C**.

20. Petitioner was physically housed at the Metropolitan Detention Center in Brooklyn, New York ("MDC Brooklyn"), a BOP-operated facility, between April 28, 2023 (date of sentencing), and July 18, 2023. *See* **Exhibit C**. During this time however, he was in fact in the custody of the U.S. Marshals Service.[4]

21. Further, since he was not yet a BOP inmate, Petitioner had not yet had a risk assessment, a needs assessment, or assignment to appropriate EBRR/PAs, which are all statutorily mandated prerequisites to earning FSA time credits. *See* 18 U.S.C. §§ 3632(a), 3624(g)(1)(A) (defining an eligible prisoner as one who "has earned time credits under the risk and needs assessment system . . .").

---

4 "The U.S. Marshals Service is responsible for the safe and secure confinement, care and transportation of federal prisoners from the time of court-ordered custody until either their acquittal or their conviction *and delivery* to the Federal Bureau of Prisons to serve their sentence . . . Seventy-five percent of the prisoners in U.S. Marshals custody are detained in state, local and private facilities; the remainder are housed in Federal Bureau of Prisons (BOP) facilities" (emphasis added). *See* https://www.usmarshals.gov/what-we-do/prisoners (last visited August 9, 2023). An inmate is not considered to be "delivered" to the BOP until s/he arrives at her BOP designated facility.

22. Even assuming, *arguendo*, Petitioner had his risk and needs assessments and was assigned to appropriate programming, there is no evidence showing Petitioner completed any approved EBRR/PA's between April 28, 2023, and July 18, 2023.[5] Attached hereto as **Exhibit D** is a true and accurate copy of the Education Transcript for Vitaly Borker, Reg. No. 64386-054. Attached hereto as **Exhibit E** is a true and accurate copy of the Work History for Vitaly Borker, Reg. No. 64386-054. Attached hereto as **Exhibit F** is a true and accurate copy of the Psychology Treatment Program History for Vitaly Borker, Reg. No. 64386-054. Attached hereto as **Exhibit G** is a true and accurate copy of the Drug Program History for Vitaly Borker, Reg. No. 64386-054. Attached hereto as **Exhibit H** is a true and accurate copy of the "Program/Treatment – Other" History for Vitaly Borker, Reg. No. 64386-054.

23. Petitioner arrived at his designated facility, FCI Fort Dix, on July 18, 2023. *See* **Exhibit C**. His first risk assessment occurred within the ordinary 28-day standardized time frame for initial classification. Specifically, it occurred on August 9, 2023. A true and accurate copy of the PATTERN Risk Assessment for Vitaly Borker, Reg. No. 64386-054, dated August 9, 2023, is attached hereto as **Exhibit I**. At that time, Petitioner was deemed to be a Medium risk for recidivism. *See id.*

24. Petitioner was transferred to FMC Devens on September 7, 2023, and his second (and most recent) risk assessment occurred during the next 180-day standardized time frame. Specifically, it was done on September 24, 2023. A true and accurate copy of the PATTERN Risk Assessment for Vitaly Borker, Reg. No. 64386-054, dated September

---

[5] Approved EBRR/PAs are on the BOP's public website at: https://www.bop.gov/inmates/fsa/docs/fsa-approved-program-guides-en.pdf?v=1.0.0 (last visited Feb. 8, 2024).

24, 2023, is attached hereto as **Exhibit J**. He was again deemed a Medium risk of recidivism. *See id.*

25. Although Petitioner was eligible to begin earning FSA credits as of July 18, 2023 (date of his arrival at his designated institution FCI Fort Dix), he did not begin earning FSA time credits until September 24, 2023. *See* **Exhibit B.** Prior to that date, he had not yet completed his portion of the SPARC-13 needs assessment system with respect to the self-report instruments which help determine his Cognitions, Anger/Hostility, and Antisocial Peers needs. *See id.*

26. To date, Petitioner earned 40 FSA credits for the time period from September 24, 2023, to February 3, 2024 (date of most recent 30-day assessment period). *See* **Exhibit B.**

**Petitioner's Application of FSA Time Credits**

27. 18 U.S.C. § 3632(d)(4)(C) provides that for eligible inmates, the Bureau of Prisons will apply First Step Act time credits toward early transfer to supervised release or early placement in prerelease custody (specifically, home confinement or placement in a residential reentry center ("RRC")).[6]

28. 18 U.S.C. § 3624(g) allows BOP to apply FSA earned time credits toward pre-release custody or early release for prisoners who have "shown through periodic risk assessments a demonstrated recidivism risk reduction or ha[ve] maintained a minimum or low recidivism risk." Specifically, an inmate seeking to have FSA time credits applied toward prerelease custody must "be a minimum or low risk to recidivate pursuant to the last 2 reassessments of the prisoner," or be approved for such a transfer by the Warden. 18 U.S.C. § 3624(g)(1)(d)(i). An inmate seeking to have time credits applied toward

---

[6] RRC's were formerly known as Community Corrections Centers, or "CCC's."

early release must have been determined to "be a minimum or low risk to recidivate pursuant to the last reassessment of the prisoner." 18 U.S.C. § 3624(g)(1)(d)(ii).

29. As explained above, Petitioner has never been deemed a minimum or low risk of recidivism. *See* **Exhibits I, J**. Therefore, the BOP is precluded from applying any FSA time credits toward early transfer to supervision. *See* 18 U.S.C. § 3624(g)(1)(d)(i).

30. The FSA allows the Warden discretion to apply time credits and transfer prisoners who are not low/minimum risk to prerelease custody. *See* 18 U.S.C. § 3624(g)(1)(d)(i). *See also* 28 C.F.R. § 523.44(c)(2). BOP Program Statement 5410.02, CN-2, *First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4)* states:

> Inmates may initiate a request under [28 C.F.R. § 523.44](c)(2) by submitting a BP-A0148 [form], Inmate Request to Staff, during their regularly scheduled Program Review. The Unit Manager will submit a request, along with the unit team's recommendation, to the Warden (or designee) for final decision.[7]

To date, Petitioner has not submitted an Inmate Request to Staff during his regularly scheduled Program Review seeking application of his FSA credits toward transfer to prerelease custody.

31. Notably, Program Statement 5410.02, CN-2, also provides that inmates ordinarily considered inappropriate for this exercise of discretion include those who, such as Petitioner, have a history of supervised release non-compliance. *See id.* at 15.

**Exhaustion of Administrative Remedies**

32. The BOP has established a multi-tiered system, known as the Administrative Remedy Program, by which a federal inmate may seek review of an issue relating to any aspect of his or her confinement except claims for which other administrative procedures have been

---

[7] A true and accurate copy of BOP Program Statement 5410.02, CN-2, *First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4)* is attached hereto as *Attachment 5*.

9

33. established (including tort claims, Inmate Accident Compensation claims, and Freedom of Information Act claims). *See* 28 C.F.R. §§ 542.10 to 542.19.

33. Prior to initiating the multi-tiered system, an inmate must first present his or her issue informally to staff. See 28 C.F.R. § 542.13. If informal resolution is unsuccessful, an inmate may initiate the formal administrative remedy process by submitting a Request for Administrative Remedy ("BP-9") to the Warden of his or her facility within 20 calendar days following the date on which the basis for the Request occurred. *See* 28 C.F.R. § 542.14. The Warden has twenty days to respond, with an extension of another 20 days if necessary. *See* 28 C.F.R. § 542.18.

34. An inmate who is dissatisfied with the Warden's response may submit an appeal to the Regional Director on the appropriate form ("BP-10") within 20 calendar days of the date the Warden signed the response. *See* 28 C.F.R. § 542.15. The appeal must be accompanied by one complete copy or duplicate original of the institution request and response. *See id*. The Regional Director has 30 days to respond, with an extension of another 30 days if necessary. *See* 28 C.F.R. § 542.18.

35. In the event the inmate is dissatisfied with the Regional Director's response, the inmate may proceed to the next and final level by filing a Central Office Administrative Remedy Appeal ("BP-11") with the BOP's Office of General Counsel within 30 calendar days of the date the Regional Director signed the response. *See* 28 C.F.R. § 542.15. The appeal must be accompanied by a complete copy or duplicate original of both the institution request and response and the regional appeal and response. *See id*. The BOP's Office of General Counsel as 40 days to respond to an appeal, with a 20-day extension if necessary. *See* 28 C.F.R. § 542.18.

36. If an inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial and proceed to the next level in the process. *See* 28 C.F.R. § 542.18. No administrative remedy appeal is considered finally exhausted until it is considered by BOP's Central Office. *See* 28 C.F.R. § 542.15(a).

37. One function of SENTRY is that it contains a complete history of administrative remedy filings made by federal inmates at any BOP facility. Administrative remedy submissions are identified first by a case number; then by an alphabetic designation showing whether the remedy was received by the local institution (denoted by a letter "F"), Regional Office (denoted by a letter "R"), or Office of General Counsel (denoted by the letter "A"); and then a number showing how many times a particular request had been received at that level. BOP does not keep copies of rejected submissions, but the submission is reflected in SENTRY.

38. I reviewed the SENTRY administrative remedy records pertaining to Petitioner in this action. A true and accurate copy of the Administrative Remedy Generalized Retrieval for Vitaly Borker, Reg. No. 64386-054, is attached hereto as *Exhibit K*.

39. On or about November 15, 2023, Petitioner filed a Request for Administrative Remedy with the Warden at FMC Devens claiming he was not getting the FSA credits to which he believed he was entitled. *See* **Exhibit K**, p. 8 ("REMEDY ID: 1181584-F1"). On or about November 29, 2023, the Warden denied Petitioner's request. *See id.* ("STATUS: CLD, STATUS REASON: DNY").

40. On or about December 11, 2023, Petitioner filed another Request for Administrative Remedy with the Warden at FMC Devens concerning his FSA credits. *See id.* ("REMEDY

ID: 1184121-F1"). On December 27, 2023, the Warden responded to Petitioner's request. *See id.* ("STATUS: CLO, STATUS REASON: XPL").

41. On January 5, 2024, Petitioner appealed the Warden's response to the Northeast Regional Director in a Regional Administrative Appeal. *See id.* at 9 ("REMEDY ID: 1184121-R1"). With extension, the Region's response is due on or before March 5, 2024. *See id.* ("RESP DUE: TUE 03-05-2024"). *See also* 28 C.F.R. § 542.18.

42. Since neither the Northeast Regional Office nor the BOP's Office of General Counsel have considered Petitioner's grievance, he has not exhausted his administrative remedies with respect to the issue of his FSA time credits.

I declare under penalty of perjury and pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge.

Executed this __16__ day of February 2024

_____
Amber Bourke, CMC
FMC Devens