UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

VITALY BORKER,        )
        Petitioner,   )
                      )
v.                    )        Civil Action No. 24-10045-LTS
                      )
WARDEN BOWERS,        )
        Respondent.   )

**********************************************************************

REPLY TO THE GOVERNMENT'S RESPONSE

**********************************************************************

Respondent first argues that the FSA remains silent, hence ambiguous, as to when the BOP must allow inmates to begin earning time credits. Respondent claims that due to this silence and ambiguity the BOP set it's own starting point of when time credits begin to accrue. According to the Respondent the BOP has properly calculated Petitioners time credits beginning with his arrival at FCI Fort Dix on 7/18/23.

Despite the Respondents contention, there is absolutely no ambiguity on when Congress intended for an inmate to be eligible to earn ETC's. The language of the FSA makes plain, that Congress intended for inmates to begin earning ETC's from the date the detained defendant's sentence was imposed. To be sure, the FSA's repeated references back to 18 U.S.C. § 3585(a) make crystal clear that a "sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transport to, or arrived voluntarily to commence service of sentence at, the official detention at which the sentence is to be served."

When read together, 18 U.S.C. § 3585(a) & 18 U.S.C. § 3632(b)(4)(B)(ii) constitute that ECT's begin to earn at the time of sentencing for an inmate who is not given the privilege of self

surrender, as the case with Petitioner. The date the Petitioner was sentenced was on 4/28/23. That is date when his sentence was commenced. That is the date when he became eligible to earn time credits. That is the starting point for when Petitioner should begin earning of time credits.

Respondent **Completely** ignores 4 other Circuit Court decisions, 3 of which were rendered in the First Circuit on the identical facts, and has cited no authority to the contrary, nor can he. Notably, <u>Umejesi v. Warden</u>, 2023 LEXIS 56661, 3/16/2023 (1st Cir.), was initially appealed by the Government and then subsequently that appeal was withdrawn. In all of these rulings, the Courts considered this same issue, and concluded that the statute is not ambiguous nor silent on the matter. The Respondent wants this Court to simply ignore these other 4 decisions, and come to the opposite conclusion.

For example in <u>Umejesi</u>, the Court considered this issue and stated that "The Court's <u>Chevron</u> inquiry starts, and ends, at step one in this case because the plain language of the FSA, and of § 3585(a), clearly establishes the date upon which the FSA must allow prisoners to start earning FSA time credits. There is no ambiguity in any of the terms of § 3632(d)(4)(A)or(B), regarding when a prisoner's completetion of programs will not count for purposes of earning time credits under the FSA. There is also no gap in the statute, with respect to when a prisoner is ineligible to earn FSA time credits. The Court, therefore, must give effect to the statutory text. <u>See Laparra-DeLeon v. [Garland]</u>, 52 F.4th [514, 519 91st Cir. 2022)]; see also <u>Chevron</u>, 467 U.S. at 842-43, 104 S.Ct. 2778. <u>Yufenyuy v. Warden FCI Berlin</u>, 2023 U.S. Dist. LEXIS 40186, 2023 WL 2398300, at *4 (D.N.H. Mar. 7, 2023); see also <u>Huihui v. Derr</u>, 2023 U.S. Dist.

LEXIS 106532, 2023 WL 4086073, at *5 (D. Haw. June 20, 2023)("Congress
has directly spoken to the precise question of when a prisoner is
ineligible for ETC's in 18 U.S.C. § 3632(d)(4)(B), which explicitly
bars a prisoner from earning credits (1) before the statute was enacted
and (2) during official detention before the prisoner's sentence
commences under § 3585(a). Section 3585(a) unambiguously provides
that '[a] term of imprisonment commences' when a prisoner is received
in custody awaiting transportation to the official detention facility
at which the sentence is to be served. 18 U.S.C. § 3585(a).").

The Court then reasoned that "Respondent have offered no persuasive
argument that there are viable reasons to deviate from the rulings
in the other cases. This Court therefore concludes, consistent with
the decision in **Yefenyu** and **Huihi**, that Petitioner became eligible
to earn ETC's once he was sentenced in the District of Massachusetts
in December, 2022, and judgment was entered committing him to the
custody of the BOP".

Next Respondent argues that "if **Borker's** position were correct,
then inmates would need to begin earning time credits immediately
after their sentencing, at a time when they may remain in USMS custody
including at non-BOP facilities." **Huihi v. Derr**, 2023 US LEXIS 106532
June 20, 2023. The Court considered the very same argument and concluded
that "she was eligible to start earning FSA ETC's under § 3585(a)
on her October 26, 2022 sentencing date, i.e., the date Petitioner
was received in custody awaiting transportation to the official detention
facility at which the sentence is to be served. It does not matter
that she was not at the official detention facility at which the
sentence is to served because the statute permits her earned credits
while she waits transportation to her final detention facility."

The Court reasoned that "she should not have to sit and wait to start taking advantage of evidence-based recidivism reduction programming or productive activities simply because BOP's Designation and Sentence Computation Center has not yet designated her. She has been sentenced, incarcerated and is currently serving her sentence in BOP's custody at FDC. She should not be prevented from earning FSA ETC's based on the whims of the BOP designation system.

So while BOP's designation of Petitioner as a "holdover" detainee may have relevance in the context of how BOP classifies its prisoners, the classification has no bearing in determining when her sentences commences; Congress has already made that determination. In this case, Petitioner was not eligible before her sentence commenced, but under 18 U.S.C. § 3632(d)(4)(B)(ii), her ineligibilty ended the moment she was sentenced under 18 U.S.C. § 3585(a) because FDC had already received her in custody and, according to BOP, she was and is still awaiting transportation to the official detention facility at which her sentence is to be served. See Yufenyuy v. Warden FCI Berlin, 2023 U.S. Dist. LEXIS 40186, 2023 WL 2398300, at *4 (D.N.H. Mrach 07, 2023)(relying on Chevron to conclude that 28 C.F.R. § 523.42(a) contradicts "the plain language of the FSA, and of § 3585(a), [which] clearly establishes the date upon which the FSA must allow prisoners to start earning FSA time credits" and that "there is no ambiguity in any of the terms of § 3632(d)(4)(A) or (B), regarding when a prisoners's completion of programs will not count for purposes of earning time credits under the FSA").

Similarly, according to the Declaration of Amber Bourke "Petitioner was housed at the Metropolitan Detention Center in Brooklyn, NY

("MDC Brooklyn"), a BOP-operated facility between April 28, 2023 (date of sentencing) and July 18, 2023." (Doc. #12 at 20). Given that Petitioner was housed at a BOP operated facility after sentencing the BOP had more than ample opportunity to begin it's Risk Assessment Process and accrual of Petitioner's FTC's as of 4/28/23.

Respondent's suggests that "it makes sense that an inmate can not earn time credits until after the BOP has identified the inmates risk levels and needs". Considering that upon intake, inmates at BOP operated facilities such as MDC Brooklyn, undergo a multi day A&O screening process to identify medical, psychological and security designation needs of new arrivals, it remains to be seen why the BOP could not also at this time identify the inmates recidivism risk level. Indeed, according to the Declaration of Amber Bourke "Pursuant to the First Step Act's directive in 18 U.S.C. § 3632, the BOP developed tools to asses an inmates risk of recidivism and their criminogenic needs" and through this process the BOP developed a program called PATTERN "which is a system designed to accurately measure an inmates change in recidivism risk during incarceration and provide opportunities for inmates to reduce their risk scores" (Doc. #12 at 9).

It then seems only logical, that considering there is a sophisticated eletronic system in place, that has been designed for this very purpose and launched at BOP operated facilities, that this system could certainly score inmates recidivism risk upon entering the BOP during the multi day A&O intake process. There is no logical reason that BOP fails to administer this process at the time of intake, other then intentionally obviating from congressionalmandates set forth in the FSA and set its own policies and rules regarding when to begin the accrual of FTC's.

Respondent further states that "Borker would in all events need
to show that he actually and successfully participated in EBRR programs
or PA's while detained at MDC Brooklyn between his sentencing (on
April 28, 2023) and his arrival at FCI Fort Dix (on July 18, 2023)."
Now that can't be right, as According to the Declaration of Amber Bourke,
"Successful Programming includes being on a waiting list for recommended
programs" (Doc. #12 Footnote Page 3). It is not the fault of Petitioner
that the BOP failed to administer the Risk Assessment screening at
the time  of intake at the MDC to identify the needs of Petitioner
and place him on the appropriate waiting lists. Petitioner has already
indicated he "worked productively as a unit orderly, never refused
to participate in any programmimg or FSA Risk Assessments, attempted
to access programming when available and maintained clear conduct"
(Doc. #1 at 1).

Ms. Bourke further clarifies that "Inmate will generally not
be considered to be "successfully programming" if they are (1) In the
Special Housing Unit foe disciplinary reasons; (2) designated outside
of the institution (e.g., in the hospital, on a furlough, ect.); (3)
temporarily transferred to another government agency; (4) placed in
a mental health or psychiatric hold; or (5) "opting-out" (i.e.,
choosing not to participate in recommended EBRR and PA). See C.F.R.
523.41(c)" (Doc. #12 at 15). Given that Petitioner does not fall
into any of these categories, the Petitioner should be considered
to have been "successfully programming" for the purposes of C.F.R.
5241(c) during this time frame that he was housed at the MDC from
the date of sentencing 4/28/23 up until the time he was transferred
to FCI Fort Dix on 7/18/23. Accordingly, Respondents argument that the
FSA remains silent and ambiguous and that there are other conditions that
preclude Petitioner from being able to accrue FTC's from the date
he was sentenced, is frivolous on it's face.

Respondents final argument erroneously states that "Petitioner is not permitted to obtain the relief that he seeks at this juncture, given that he remains a Medium risk to recidivate." This argument is simply wrong as a matter of law and calls into question wheather Respondent has any familiarity with the FSA at all. Under the FSA, Eligible inmates with all recidivism risk scores may earn FTC's, but only those inmates with "low" and "minimum" risk scores can have the FTC's applied to prerelease custody or early transfer to supervised release. See 28 C.F.R. 523.42 (outlining the earning of First Step Act Time Credits) see also 28 C.F.R. 523.44(c)(1),(d)(1).

Put another way, eligible inmates can accumulate or "earn" FSA time credits in the bank throughout their incarceration, but they may only "apply" those accumulated time credits towards early release once the inmates assessed risk of recidivism is categorized as a low or minimum. See BOP Statement 5410.01 First Step Act of 2018-Time Credits: Procedures for Implementation of 18 U.S.C. 3632(d)(4) Section 10(c) at 16 ("Medium and High Pattern Risk inmates any earn FTC...").

The fact is further corroborated by Respondent's attached Declaration of Amber Bourke (Doc. #12) who states "Petitioner is therefore eligible to earn FSA Time Credits" (Doc. #12 at 9) and "[Petitioner] was again deemed a Medium risk of recidivism" (Doc. 312 at 2) and "To date, Petitioner earned 40 FSA credits for time period from September 24, 2023 to  February 03, 2024" (Doc. #12 at 26). If Petitioner is eligible, is a Medium Risk of Recidivism and has also at the same time earned 40 FSA credits towards release for up until just 20 days ago, then common sense dictates that he is permitted to obtain relief at this juncture.

Petitioner is well aware that he is currently a Medium Risk of Recidivism. A risk level of Medium does not preclude petitioner from "earning" time credits under the FSA. Petitioner is scheduled for a team review on or about 3/20/24, in which his Recidivism score is expected to drop to a Low based on the plethora of courses that he has already taken. Further, Petitioners criminal history has since been amended by the Probation Department on 12/8/23, following the 2023 retroactive Guideline Amendments. That change alone, will put Petitioner into a low risk of recidivism. (Exhibit A: Letter from Mayer Brown LLC which was SO ORDERED by Judge Rakoff on 1/29/24. Case 1:22-cr-00273-JSR Document #43).

Petitioner is not asking this Court to order the BOP to "apply" his earned time credits. Petitioner is aware that the credits that that have been earned will be applied only when he reaches  a recidivism level of low at his next scheduled assessment. Petitioner is only requesting the court order that the BOP recalculate this earned time-credits with an effective date of 4/28/23, which is the date Petitioner's sentenced "commenced".

**Accordingly, Respondents final argument that "he is not currently eligible for the relief that he seeks via habeas" should be disregarded.**

CONCLUSION

The BOP regulation that prevents Petitioner from being eligible for ETC's from the time that he began to serve his sentence contranenes the goals of the FSA and ignores the clear intent of Congress. The Court should order the BOP recalculate Petitioner's Sentence award him ETC's from the date of his sentencing which was 4/28/23.

Dated: <u>February 26, 2024</u>

Respectfully Submitted,

Vitaly Borker, #64386-054

## CERTIFICATE OF SERVICE

I, Vitaly Borker, hereby certify that a copy of the attached document was served on the U.S. District Court for the District of Massachusetts, by turning it over to the FMC-Devens mailroom staff , Firs Class postage prepaid, Address to: Clerk of Court, One Courthouse Way, Suite 2300, Boston, MA 02210. On this the 26th day, February, 2024. Also addressed to the U.S. Attorney's Office, AUSA Michael L. Fitzgerald, 1 Courthouse Way, Suite 9200, Boston, MA 02210 by the same means at the same time the foregoing document "Recalculate FSA's points." For mailing via U.S. Mail.

Vitaly Borker, #64386-054
FMC-Devens
P.O. Box 879
Ayer, Massachusetts 01432
Filing Pro Se