UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| VITALY BORKER, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil No. 24-10045-LTS |
| ) | |
| WARDEN BOWERS, ) | |
| ) | |
| Respondent. ) | |

ORDER ON MOTION TO DISMISS (DOC. NO. 10)

April 9, 2024

SOROKIN, J.

Vitaly Borker, presently incarcerated at the Federal Medical Center ("FMC") in Devens, Massachusetts, has filed a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2241. He challenges the manner in which the Bureau of Prisons ("BOP") has calculated certain credits available under the First Step Act ("FSA"). Doc. No. 1.[1] The respondent seeks dismissal of the petition, urging it fails to state a claim because the BOP has correctly applied the FSA and the regulations implementing it. Doc. No. 10. Because the respondent's position is not supported by the language of the relevant statutes and has been rejected by several other District Courts in persuasively reasoned decisions, the motion to dismiss is DENIED.

I.    BACKGROUND

Borker is serving a pair of consecutive sentences imposed by District Judges in the Southern District of New York. In 2022, during his supervised release arising from a 2017

---

[1] Citations to "Doc. No. __ at __" reference submissions appearing on the Court's electronic docket in this action, using the document and page numbers appended in the ECF header.

offense, Borker was indicted for fraud.  See Doc. No. 11 at 4-5 (citing docket numbers and relevant dates for both cases).  He entered a guilty plea in the new case and was sentenced on April 28, 2023, to thirty months' imprisonment.  Id.; see Doc. No. 12 ¶ 5.  Because of the new conviction, Borker's supervised release was revoked on May 17, 2023, and he received a consecutive term of fourteen months' imprisonment in the earlier case.  Doc. No. 12 ¶ 6.  Pursuant to a federal statute, the BOP aggregated the sentences, treating them as a single forty-four-month term for administrative purposes.  Id. ¶ 7 (citing 18 U.S.C. § 3584(c)).

When these sentences were imposed, Borker was in custody at the Metropolitan Detention Center ("MDC") in Brooklyn, New York.  The MDC is a BOP facility.  See Fed. Bureau of Prisons, MDC Brooklyn, https://www.bop.gov/locations/institutions/bro/ (last visited Apr. 4, 2024) [https://perma.cc/YN3P-L7RB].  He remained at the MDC until July 18, 2023, when he was transferred to the Federal Correctional Institution ("FCI") in Fort Dix, New Jersey—the institution originally designated as the one where Borker would serve his sentence.  Doc. No. 12 ¶¶ 19-20.  The BOP administered Borker's first risk assessment on August 9, 2023, and deemed him a medium risk for recidivism.  Id. ¶ 23.  He was transferred to FMC Devens on September 7, 2023, and the BOP administered a second risk assessment later that month confirming the medium-risk designation.  Id. ¶ 24.  According to the BOP, Borker completed a self-assessment on September 24, 2023—the same date as his second risk assessment.  Id. ¶¶ 25-26.  Starting on that date, the BOP allowed Borker to begin accruing FSA time credits.  Id.  The BOP presently estimates that Borker's projected release date, factoring in statutory "good conduct time," is in April 2025.  Id. ¶ 7.

In November and December 2023, Borker made administrative requests to the warden at FMC Devens claiming he was entitled to FSA time credits for the period starting on April 28,

2023 (the date he was sentenced in his most recent criminal case).  See Doc. No. 1-1 at 2; Doc.

No. 12 ¶¶ 39-40.  When those requests were rejected, Borker appealed administratively and also

filed the pending federal habeas petition.  See Doc. No. 1; Doc. No. 12 ¶ 41.

Before this Court, Borker's original petition urges that the BOP's approach to awarding

FSA time credit only after an individual arrives at his designated facility contravenes the FSA's

plain language.  See Doc. No. 1.  Instead of answering the petition, the respondent filed a motion

asking the Court to dismiss it pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to

state a claim, arguing that the Court should find as a matter of law that the BOP has "properly

calculated Borker's time credits."[2]  Doc. No. 11 at 2.  Borker replied, Doc. Nos. 14, 15, and so

the motion to dismiss is fully briefed.[3]  The Court resolves it on the papers.

II.    DISCUSSION

Resolution of the question presented by the respondent's motion requires a basic

understanding of the FSA.  Enacted in 2018, the FSA directed the BOP to develop and

implement "a risk and needs assessment system" aimed at evaluating federal inmates' risk of

---

[2] Though exhaustion of administrative remedies is ordinarily required before a petitioner may seek relief from a federal court via a § 2241 petition, it is not a jurisdictional requirement in this context; it is subject to waiver in certain circumstances, and its application is within the Court's discretion.  See Patel v. Barron, No. C23-937, 2023 WL 6319416, at *2 (W.D. Wash. Sept. 5, 2023), R. & R. approved & adopted, 2023 WL 6311281, at *1 (Sept. 28, 2023).  Here, because the respondent has not cited failure to exhaust as a basis upon which it seeks dismissal, the Court declines to inject and evaluate that issue sua sponte.

[3] Since filing his reply, Borker has submitted a memorandum in which he appears to expand and/or supplement the claim articulated in his original petition.  See Doc. No. 16 (raising two additional issues related to FSA time credits, one of which concerns a recent amendment to the Sentencing Guidelines that Borker believes could support retroactively lowering his assessed level of risk and entitle him to additional credits).  The respondent characterizes this as "a new petition," Doc. No. 17 at 1, in a filing which led to a letter from Borker asking to have his memorandum re-docketed in the manner the respondent suggested, Doc. No. 19.  Because Borker has thus far been representing himself in this action, the Court construes his recent submission as a request to amend his original petition to add other claims or theories that also challenge the BOP's calculation of his sentence.  Resolution of that request is properly reserved for another day, as explained in the Conclusion section, infra.

recidivism and assigning them to "evidence-based recidivism reduction programming and productive activities" ("EBRRs" and "PAs") tailored to their risk and needs.[4]  18 U.S.C. § 3632(a)-(b); see Patel, 2023 WL 6319416, at *3.  As part of the system devised pursuant to the FSA, Congress required the BOP to "provide incentives and rewards for prisoners to participate in and complete" EBRRs and PAs.  § 3632(d).  The incentives identified in the FSA include expanded privileges (e.g., telephone, visitation, and access to email), potential transfer to a facility closer to the inmate's home or preferred housing units, and the ability to earn time credits that can result in earlier transfer to prerelease custody or supervised release.  Id.  Borker's habeas petition is concerned with this last privilege—time credits.

The FSA provides that eligible prisoners "shall earn . . . 10 days of time credits for every 30 days of successful participation in" EBRRs or PAs.[5]  § 3632(d)(4)(A)(i).  If a prisoner is deemed "a minimum or low risk for recidivating" and, "over 2 consecutive assessments, has not increased their risk of recidivism," he is entitled to "an additional 5 days of time credits" (i.e., fifteen days of credits) "for every 30 days of successful participation in" EBRRs or PAs. § 3632(d)(4)(A)(ii).  The FSA expressly limits the availability of time credits by identifying two—and only two—circumstances in which eligible prisoners "may not earn" them.  As relevant here, a prisoner cannot accrue FSA time credits "during official detention prior to the date that the prisoner's sentence commences under [18 U.S.C. §] 3585(a)."[6]  § 3632(d)(4)(B)(ii). Section 3585(a), in turn, states that any "sentence to a term of imprisonment commences on the

---

[4] The FSA's requirements are directed to the Attorney General, but they have been implemented via regulations enacted by the BOP.  For simplicity, the Court refers to the BOP.
[5] The same section of the FSA identifies categories of prisoners who are statutorily ineligible for FSA time credits, either due to their offense of conviction or their immigration status.  See § 3632(d)(4)(D)-(E).  Nothing before the Court suggests Borker is within any of those categories.
[6] Time credits also are unavailable for programming completed "prior to the date of enactment" of the FSA.  § 3632(d)(4)(B)(i).

date the defendant is received in custody awaiting transportation to . . . the official detention facility at which the sentence is to be served."[7]

In the wake of the FSA, the BOP "implemented regulations codifying its procedures regarding the earning and application of time credits" under the new law.  Patel, 2023 WL 6319416, at *3; see also Doc. No. 11 at 2-3 (describing risk-assessment tools developed by the BOP to evaluate inmates as the FSA requires).  One such regulation provides that "[a]ny inmate sentenced to a term of imprisonment pursuant to a conviction for a Federal criminal offense . . . is eligible to earn FSA Time Credits."  28 C.F.R. § 523.41(d)(1).[8]  The next regulation, describing "[w]hen an eligible inmate begins earning FSA Time Credits," id. § 523.42(a), is the one upon which the parties' dispute centers.  In it, the BOP first echoes the FSA by stating the accrual of FSA time credits "begins . . . after the inmate's term of imprisonment commences." Id.  It goes on, however, to parenthetically specify that (in the agency's view) such a term "commences" on "the date the inmate arrives . . . at the designated [BOP] facility where the sentence will be served."  Id.

The question presented by the respondent's motion is whether, with this language, the agency permissibly filled a gap in the FSA with an interpretation that is entitled to deference, or whether it promulgated a regulation that contravenes the intent of Congress as clearly expressed in the FSA.  After careful review of the parties' submissions and of decisions by other courts confronting the same question, the Court concludes the agency has done the latter.

---

[7] Not pertinent here, the omitted language concerns when a term of imprisonment begins for a person who is not detained at the time of sentencing and is permitted to self-surrender at their designated facility.

[8] The regulation identifies only one exception to this broad definition of eligibility, and it does not apply to Borker.  See 28 C.F.R. § 523.41(d)(2) (excluding those serving sentences for offenses the FSA itself identifies as rendering a person ineligible for time credits).

Hoping to avoid this result, the respondent urges that the agency acted appropriately both in adopting the relevant regulation and in applying it to Borker.  In the respondent's view, the FSA merely identifies time periods during which time credits may <u>not</u> be earned (i.e., during any pre-sentence period of detention), but it does not establish a mandatory starting point for the period during which such credits <u>may</u> be earned.  <u>E.g.</u>, Doc. No. 11 at 4 (suggesting the FSA is "silent as to when the BOP must begin offering EBRR programs and PAs to eligible inmates, such that they can begin earning time credits").  Because the respondent perceives a gray area or gap in the FSA's language, it contends that this Court must defer to the BOP's regulation, which it says "constitutes a proper exercise of its rulemaking authority," <u>id.</u> at 8, and permissibly prevents a prisoner from earning FTC time credits until they arrive at their designated facility— an event that might not occur until several months after the judgment of sentence enters (as was the case for Borker).  Notably, however, the respondent has not cited a single case in which any federal court, in Massachusetts or elsewhere, has analyzed the relevant provision of the FSA alongside the BOP regulation implementing it and issued a reasoned decision endorsing the view the respondent espouses here.[9]

---

[9] None of the cases the respondent does cite engaged directly with the question presented here. <u>See, e.g.</u>, <u>Walsh v. Boncher</u>, 652 F. Supp. 3d 161, 166-71 (D. Mass. 2023) (dismissing similar petition for failure to exhaust without discussing the merits of the claims or analyzing the relevant statute and regulation); <u>Winegar v. Boncher</u>, No. 22-cv-11632, 2022 WL 17404897, at *2 (D. Mass. Dec. 2, 2022) (rejecting claim that petitioner was entitled to FSA time credits he would accumulate in the future upon completion of certain classes, but seeking further briefing on whether credits should have accrued during quarantine period despite BOP regulation providing that credits could not be earned during such a period); <u>Mohammed v. Stover</u>, No. 23-cv-757, 2023 WL 7300592, at * (D. Conn. Nov. 6, 2023) (rejecting a variety of claims not relevant here, such as a claim that the petitioner should have received FSA time credits during pretrial detention and a claim that FSA time credits should be applied earlier than the time identified by the statute, and also noting in passing that accrual begins upon arrival at the designated facility without acknowledging or engaging with the conflict between the BOP regulation and §§ 3585(a) and 3632(d)(4)(B)(ii)); <u>Szanyi v. Pullen</u>, No. 22-cv-1253, 2023 WL

Ably advocating on his own behalf, Borker directs the Court's attention to a series of decisions in which other District Courts have rejected the position the respondent advocates here. See Doc. No. 13 at 2-3 (citing cases from the Districts of New Hampshire and Hawaii and the Western District of Washington).[10]  Relying on those decisions, Borker argues that "there is absolutely no ambiguity" in the plain language of the FSA with respect to "when Congress intended for an inmate to be eligible to earn" time credits.  Id. at 1; see Umejesi v. Warden, FCI Berlin, No. 22-cv-251, 2023 WL 4101471, at *1 (D.N.H. Mar. 16, 2023), R. & R. approved & adopted, 2023 WL 4101466, at *1 (Mar. 30, 2023) (granting habeas petition claiming entitlement to FSA time credits between date of sentencing and date of transfer to designated facility); Yufenyuy v. Warden, FCI Berlin, 659 F. Supp. 3d 213, 215 (D.N.H. 2023) (same); Patel, 2023 WL 6319416, at *1 (same); Huihui v. Derr, No. 22-cv-541, 2023 WL 4086073, at *5 (D. Haw. June 20, 2023) (dismissing petition without prejudice for other reasons, but noting while articulating a series of directives to the BOP that "unless [the petitioner] is ineligible for [other] reasons . . . [she] should have been afforded an opportunity to earn FSA [time credits] . . . on the date she was sentenced . . . because she was already in BOP's custody at the time of sentencing").  Indeed, the cases Borker cites are not the only ones in which a federal court has endorsed the position he advances here.  See Komando v. Warden, FCI Berlin, No. 22-cv-425, 2023 WL 4101540, at *1 (D.N.H. Mar. 16, 2023).

---

1108469, at *2 (D. Conn. Jan. 30, 2023) (rejecting claim by a person seeking FSA credit for a period before she was sentenced and which included time when she was not even detained).

[10] The respondent's memorandum dismisses Borker's reliance on "a few out-of-district cases," without engaging with the consistent and clearly expressed reasoning those courts provided to support their determinations.  Doc. No. 11 at 8.  The failure to meet those decisions head-on is especially telling in light of the respondent's inability to identify even one decision reaching the opposite conclusion.

Upon consideration of the plain language of the relevant FSA provisions, the conflicting directive included in the BOP regulation, and the persuasive reasoning carefully and uniformly expressed by other federal courts in the cases cited above in which Borker's view has prevailed, the Court finds no support for the argument that is central to the respondent's pending motion. As the earliest of the decisions Borker has cited explained in detail, the FSA plainly requires that a prisoner "shall" earn time credits at the rate described for all EBRRs and PAs the prisoner completes, so long as such programming occurred after the enactment of the FSA and after the person's "sentence commences." Yufenyuy, 659 F. Supp. 3d at 217-18. The incorporated definition of when a "sentence commences" is equally clear; it is "the date the defendant is received in custody awaiting transport to" whatever facility BOP designates. Id. There is no gray area here. The statutory language is unambiguous. The BOP's regulation, however, "does not mirror the language in the FSA defining when a prisoner can begin earning FSA time credits," and instead "specifies a different date as the date when a prisoner can begin to earn FSA time credits." Id. at 218 (emphasis added).

For a defendant like Borker, who was detained in a BOP facility at the time of his sentencing but waited months to be transferred to a designated FCI, this difference matters. The FSA requires that he be permitted to earn time credits when his judgment of sentence enters (as he is then already "in custody awaiting transport" to a designated facility), but the BOP's regulation prevents him from earning such credits until after his transport when he arrives at the designated facility. This contravenes the command of Congress, something the BOP cannot do. Moreover, there can be a significant wait between those two events, as the facts of this case and those Borker cites demonstrate. See id. at 215 (noting petitioner Yufenyuy waited five-and-a-half months between his sentencing and his arrival at a designated facility). In these

circumstances, the Court joins the small but growing chorus of federal courts holding in unison that the regulation "is contrary to the express language of the FSA" and cannot justify the dismissal of Borker's petition.[11] Id. at 218.

Two points bear mention before this Order concludes and litigation of Borker's claims continues.  First, Borker is presently serving an aggregate term that includes two separately imposed sentences—one from April 2023 on his newest conviction, and the other a few weeks later for a violation of supervised release.  The Court notes that this presents a potential question regarding which of those dates marked the commencement of Borker's sentence, though the parties have not addressed this nuance.  See Patel, 2023 WL 6319416, at *1 (reflecting a petitioner in somewhat analogous circumstances sought credits only for the time period that began when the last component of his aggregate sentence was imposed).  The Court need not presently resolve this issue and is not inclined to do so without first hearing from the parties.

Second, the respondent alternatively suggests that, even if Borker could have accrued time credits before his transfer out of the MDC, he has not shown he completed any qualifying EBRRs or PAs in that time period.  Doc. No. 11 at 9.  But the respondent has also submitted an affidavit in which a BOP official notes that participation in such programming "includes being on a waiting list for a recommended program," Doc. No. 12 ¶ 10 n.1, and the Court cannot discern from the present record whether Borker was on any such lists while at the MDC.  Further, Borker does allege, as other petitioners advancing similar claims in the past have done,

---

[11] The respondent suggests this conclusion would put the BOP in a "difficult" or even "impossible" position, requiring the assessment of a prisoner and assignment to EBRRs "before he arrives at a BOP facility."  Doc. No. 11 at 9.  The Court is unmoved for two reasons.  First, Congress's clear intent expressed through unambiguous statutory language cannot be disregarded because that intent proves inconvenient for the agency.  And second, Borker was in a BOP facility during the relevant period.  Any considerations that might arise for a defendant detained in a non-BOP setting are simply not presented in this case.

that he "worked productively as a unit orderly, never refused to participate in any programming or FSA risk assessments, attempted to access programming when available and maintained clear conduct."  Doc. No. 1 at 7; see Yufenyuy, 659 F. Supp. 3d at 215 (noting petitioner "was of good behavior, did not commit any disciplinary infractions, never refused to participate in any programs, and participated in what programming was available to him"); see also 28 C.F.R. § 523.41(b) (defining PAs broadly as "a group or individual activity that allows an inmate to remain productive and thereby maintain or work toward achieving a minimum or low risk of recidivating").  As such, this issue requires further development and does not justify dismissal.

III.   CONCLUSION

    For the foregoing reasons, the respondent's motion to dismiss (Doc. No. 10) is DENIED. Because of the relative novelty in this District of the issues presented and given the potential challenges Borker would face developing the record, the Court hereby APPOINTS counsel to represent Borker in this action under the Criminal Justice Act.  18 U.S.C. § 3006A(a)(2)(B).  The appointed lawyer shall review Borker's submissions, including his recent memorandum (Doc. No. 16), then shall meet with Borker to discuss whether an amendment of the existing petition, or the filing of a second petition, is appropriate.  The respondent need not answer the recent memorandum absent a further Court order requiring and setting a deadline for such response.

    In addition, counsel for both parties shall confer and, **within thirty days**, shall file a status report stating their joint or separate positions regarding: 1) what further motions and/or briefing are necessary to resolve this action—including, but not limited to, any motion to amend

or supplement the original petition, and both parties' briefing of the merits of Borker's claim(s);

and 2) on what schedule such submissions should occur.

SO ORDERED.

 /s/ Leo T. Sorokin
United States District Judge