Ee UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| VITALY BORKER,<br><br>               Petitioner,<br><br>v.<br><br>WARDEN BOWERS,<br><br>               Respondent. | Civil Action No. 24-10045-LTS |

**RESPONDENT'S RESPONSE TO COURT ORDER**

On April 9, 2024, the Court denied Respondent's motion to dismiss Petitioner's petition for a writ of habeas corpus, finding that a detained federal inmate in Borker's position is eligible to begin earning time credits under the First Step Act (FSA) immediately upon sentencing, and need not wait until his arrival at the BOP-designated facility where he will serve his sentence. Doc. No. 20.[1]  The Court observed, however, that the issue whether Borker successfully participated in evidence-based recidivism reduction (EBRR) programs or productive activities (PAs), such that he should have *earned* FSA time credits, "require[d] further development," and "[did] not justify dismissal" of the petition at that time. *Id.* at 10.  Respondent therefore respectfully submits the following response to aid the Court's resolution of that issue.  For the reasons explained below, the Court should deny awarding Borker the habeas relief that he seeks.

---

[1] Respondent understands and respects the Court's ruling; does not seek to re-litigate the motion to dismiss in this submission; and seeks only to provide the Court with information and arguments to aid its resolution of the remaining dispute in this matter.  That said, Respondent expressly reserves all rights with respect to the Court's order and ultimate judgment, including those of appeal.

The FSA states that an eligible prisoner "shall earn 10 days of time credits for every 30 days of successful participation in [EBRR] programming or [PAs]." 18 U.S.C. § 3632(d)(4)(A)(i). It further states that an eligible prisoner "determined by the [BOP] to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in [EBRR] programming or [PAs]." *Id.* § 3632(d)(4)(A)(ii). Thus, the statute makes clear that eligible prisoners may earn FSA time credits only if they successfully participate in EBRR programs or PAs.

The FSA authorizes and directs the Attorney General (through the BOP) to identify and assign the EBRR programs and PAs that—if successfully participated in—will result in FSA time credits. The statute directed the Attorney General to develop "a risk and needs assessment system" to, among other things, "*determine* the type and amount of [EBRR] programming that is appropriate for each prisoner and *assign* each prisoner to such programming accordingly." 18 U.S.C. § 3632(a) (emphasis added). It also directs the BOP to "assign" the appropriate EBRR programs and PAs to prisoners based on guidance from this system. *Id.* § 3632(b). And it required the Attorney General to, before implementing this system, "*identify* the most effective [EBRR] programs" in existence at the time, and then "direct the [BOP] regarding" those "[EBRR] programs" and "the addition of any new effective [EBRR] programs *that the Attorney General finds*." 18 U.S.C. § 3633(a) (emphasis added). Accordingly, the only EBRR programs and PAs that will result in FSA time credits are those programs and activities identified and assigned by the Attorney General (through the BOP).

Moreover, the FSA itself defines an EBRR program as "either a group or individual activity that," among other things, "has been shown by empirical evidence to reduce recidivism or is based

2

on research indicating that it is likely to be effective in reducing recidivism." 18 U.S.C. § 3635(3). Again, as just mentioned, the statute required the Attorney General to "identify" the "effective" EBRR programs for using in conjunction with awarding FSA time credits. 18 U.S.C. § 3633(a). In addition, the FSA defines a PA as "either a group or individual activity that is designed to allow prisoners determined as having a minimum or low risk of recidivating to remain productive . . . ." *Id.* § 3635(5). Both definitions therefore contemplate that EBBR programs and PAs giving rise to FSA time credits will consist of those programs and activities identified and assigned by the BOP—after an inmate has been assigned a risk level.

Consistent with these statutory directives, the BOP's implementing regulations further provide that "[s]uccessful participation" in EBBR programs or PAs "requires a determination by Bureau staff that an eligible inmate has participated in the EBRR programs or PAs *that the Bureau has recommended based on the inmate's individualized risk and needs assessment*, and has complied with the requirements of each particular EBRR Program or PA." 28 C.F.R. § 523.41(c)(1) (emphasis added). Thus, to "successfully participat[e]" in EBRR programs or PAs—and, as a result, to earn FSA time credits—an inmate must have participated in the EBRR programs or PAs that the BOP identified and assigned to that inmate. To be sure, the BOP's regulation and policy treat an inmate who has not "[o]pted out" of "recommended" EBBR programs or PAs to have successfully participated in those EBRR programs or PAs (barring some other exception). *Id.* § 523.41(c)(4)(v); *see also* Doc. No. 26 (Declaration of D. Wolf) (Wolf Decl.) ¶ 14. Which is why "[s]uccessful participation" will generally include "being on a waiting list for a *recommended* program." Doc. No. 12 ¶ 10 n.1 (emphasis added). The critical point remains, however, that earning FSA time credits requires successful participation in (i.e., not "opting-out" of) an EBRR program or PA *identified and assigned by the BOP*.

3

Indeed, the district courts to have considered this issue have routinely reached the same conclusion: "it is clearly with[in] the BOP's discretion to determine what programs will be eligible for receipt of time credits upon successful competition." *Cohen v. Hudgins*, No. 1:20-cv-211, 2021 WL 6066667, at *4 (N.D.W. Va. Oct. 28, 2021); *see also, e.g.*, *Acosta v. Monarez*, No. 23-cv-02395, 2024 WL 1285632, at *1 (D. Ariz. Mar. 26, 2024) ("prisoners may earn First Step Act Time Credits for the *completion* of approved EBRR Programs"); *Warhol v. Cox*, No. 20-cv-04188, 2021 WL 11644403, at *11 (D.S.D. Nov. 3, 2021) ("Because the Act requires the BOP to assess inmates and assign programming and activities, it is within the BOP's discretion to determine which programming and activities qualify for time credits."); *Bains v. Quay*, No. 21-cv-00353, 2021 WL 5343485, at *9 (M.D. Pa. Oct. 27, 2021), *report and recommendation adopted*, 2021 WL 5330841 (M.D. Pa. Nov. 16, 2021) ("Bains has accrued no EBRR or PA program credit based on his completion of these educational courses that are not approved for FSA time credit purposes."); *Butler v. Bradley*, No. 2011-cv-211, 2021 WL 945252, at *4 (C.D. Cal. Feb. 22, 2021), *report and recommendation adopted*, 2021 WL 5596151 (C.D. Cal. Nov. 30, 2021) ("If an inmate could accrue FSA credits by participating in any type of recidivism-reduction program or activity, the statutory language instructing the BOP to establish and implement an individualized risk and needs assessment system . . . would be superfluous."); *Hare v. Ortiz*, No. 18-cr-588, 2021 WL 391280, at *9 (D.N.J. Feb. 4, 2021) ("Time Credits are earned only when an inmate successfully completes one of the BOP-approved EBRR programs or PAs related to one of the particular needs assigned to that inmate.").

To that end, the BOP has developed and published an extensive list of approved EBRR programs and PAs that it may assign to inmates based on their respective needs and risk levels. *See* Doc No. 26-4 (Exhibit D to Wolf Decl.) (First Step Act Approved Programs Guide). The BOP

does not, however, have any record of Borker participating in—or being on a waitlist for—any such approved programming (or, indeed, any programming at all) from April 28, 2023 (the date of his sentencing) through July 18, 2023 (the date that he arrived at FCI Fort Dix).  *See* Wolf Decl. ¶ 31; *see also* Doc. No. 27 (Declaration of B. Reynolds) ¶ 7.  Although Borker alleged that he "worked productively as a unit orderly, never refused to participate in any programming or FSA risk assessments, attempted to access programming when available[,] and maintained clear conduct," Doc. No. 1 at 1, he does not claim that he successfully participated in any qualifying EBRR programs or PAs.  And, even if he did, such allegations alone—unsupported by evidence— would not warrant the habeas relief that he seeks.  *Cf. Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

This case therefore resembles the situation in one of the cases that Borker cited in support of his petition, *Huihui v. Derr*, No. 22-cv-00541, 2023 WL 4086073 (D. Haw. June 20, 2023).  There, the district court similarly concluded that the inmate "was eligible to start earning FSA time credits on the day she was sentenced, October 26, 2022, because she was already incarcerated and in BOP's custody."  *Id.* at *7.  The district court then inquired whether the inmate "ha[d] 'successfully complete[d] [EBRR] programming or [PAs]' . . . after October 26, 2022 [the date of her sentencing],'" and, if so, ordered the BOP to re-calculate her FSA time credits using "her sentencing date as the date she [was] eligible to start earning [such credits]."  *Id.*  Subsequently, the parties submitted filings showing that "between October 26, 2022," the date of the inmate's sentencing, "and March 30, 2023," the date that the inmate arrived at her BOP-designated facility, she "was not participating in any qualifying [EBRR] programming or [PAs]."  Doc. No. 25-1 (Exhibit A) at 4.  Notably, the petitioner asserted that she engaged in certain activities during this interim period.  But the district court explained that it was "in no position to sua sponte reclassify,

5

for example, exercise classes Petitioner took between October 2022 to March 2023 into approved EBRR programs or PAs when they are clearly not under the FSA regime." *Id.* at 3–4 (citing First Step Act Approved Programs Guide). The district court thus determined that it could not provide the petitioner any further relief. *Id.* at 5.

Finally, Respondent again acknowledges Borker's point that "[i]t is not [his] fault . . . that the BOP" did not "administer the Risk Assessment screening at the time of [his] intake at the MDC." Doc. No. 13 at 6. But, as Respondent previously explained, "the BOP has not sought to penalize or cast blame on Borker." Doc. No. 14 at 4. Nor did it delay in transferring him from MDC Brooklyn to his BOP-designated facility, where he could then undergo a risk-and-needs assessment. Unlike in *Huihui*, this is not a situation in which he "ha[d] been waiting over seven months to start earning any credits." 2023 WL 4086073, at *7. Rather, this was "a situation in which the prisoner" had only "been waiting for a month or two to be transferred." *Id.* In all events, the fact remains that "an inmate must undergo a risk and needs assessment"—and then be assigned appropriate EBRR programs and PAs—"before he can begin earning time credits." Doc. No. 14 at 4. And insofar as Borker may seek to argue that, moving forward, the BOP must begin conducting risk-and-needs assessments—and assigning EBRR programs and PAs—earlier than it already does, such extraordinary and programmatic injunctive relief would exceed the Court's jurisdiction in this individual habeas petition.

                                                      Respectfully submitted,

                                                      JOSHUA S. LEVY
                                                      Acting United States Attorney

Dated: May 9, 2024                       By:    */s/ Michael L Fitzgerald*
                                                                MICHAEL L. FITZGERALD

>Assistant United States Attorney
>U.S. Attorney's Office
>1 Courthouse Way, Ste. 9200
>Boston, MA 02210
>(617) 748-3266
>michael.fitzgerald2@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

>*/s/ Michael L Fitzgerald*
>MICHAEL L. FITZGERALD
>Assistant U.S. Attorney

Dated: May 9, 2024