UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| VITALY BORKER,<br><br>             Petitioner,<br>v.<br><br>WARDEN BOWERS, FMC Devens,<br><br>             Respondent. | Civil Action No. 24-CV-10045-LTS |

## DECLARATION OF DARLA WOLF

I, DARLA WOLF, declare and state as follows:

1. I am currently employed by the Federal Bureau of Prisons ("BOP") of the United States Department of Justice, as the Education Administrator in the Reentry Services Division of the BOP's Central Office. I have held this position since October 9, 2022, and I began working for the BOP on September 28, 1997.

2. The Reentry Services Division ("RSD") furthers the mission of the BOP by preparing prisoners for successful reentry into the community by providing opportunities for self-improvement and skills development to reduce recidivism and improve public safety. RSD oversees the policy and implementation of needs assessments, programming, and incentives under the First Step Act ("FSA") to ensure fairness, consistency, and effectiveness across the populations we serve and the employees performing the work.

3. I make this Declaration in connection with the petition filed by Vitaly Borker, Reg. No. 64386-054 ("Petitioner"), seeking time credits from April 28, 2023 (date of sentencing), to July 18, 2023 (date he arrived at his designated institution).

**FSA Background**

4. On December 21, 2018, the First Step Act ("FSA") was signed into law. The bipartisan legislation had three main goals: (1) correctional reform via the establishment of a risk and needs assessment system at the Bureau of Prisons; (2) sentencing reform via changes to penalties for some criminal offenses; and (3) the reauthorization of the Second Chance Act of 2007 (P.L. 110-199).[1]

5. Under the FSA, the Attorney General was charged with developing and implementing a risk and needs assessment system. 18 U.S.C. § 3632. In carrying out this responsibility, the Attorney General consulted with the Director of the Bureau of Prisons, the Director of the Administrative Office of the United States Courts, the Director of the Office of Probation and Pretrial Services, the Director of the National Institution of Justice, the Director of the National Institution of Corrections, and an Independent Review Committee ("IRC") comprised of experts in criminology and prison systems and hosted by the nonpartisan and nonprofit Hudson Institute. *See The First Step Act of 2018: Risk and Needs Assessment System*, pp. 7-13, U.S. Department of Justice (July 19, 2019).[2] Additionally, the Department of Justice held three listening sessions to enable experts, stakeholders, and public interest organizations to comment on the development of the risk and needs assessment system. *See id.* at 14-16.

6. As a result of these efforts, in July 2019, the BOP introduced the Prisoner Assessment Tool Targeting Estimated Risk and Needs ("PATTERN"). PATTERN is a system designed to accurately measure an inmate's change in recidivism risk during

---

[1] *See* THE FIRST STEP ACT OF 2018: AN OVERVIEW, Congressional Research Service (March 4, 2019), available at https://crsreports.congress.gov/product/pdf/R/R45558.
[2] Available at https://www.bop.gov/inmates/fsa/docs/the-first-step-act-of-2018-risk-and-needs-assessment-system.pdf.

       incarceration and provide opportunities for inmates to reduce their risk scores. BOP continues to assess the validity of PATTERN, and on May 6, 2022, the BOP revised and adopted PATTERN version 1.3, which is the iteration currently in use. *See First Step Act Annual Report,* U.S. Department of Justice, p. 8 (April 2023).[3]

7. Similarly, the Standardized Prisoner Assessment for Reduction in Criminality ("SPARC-13") identifies thirteen needs areas which are dynamic factors that can be targeted to reduce an inmate's risk of recidivism. These areas include Anger/Hostility; Antisocial Peers; Cognitions; Dyslexia; Education; Family/Parenting; Finance/Poverty; Medical; Mental Health; Recreation/Leisure/Fitness; Substance Abuse; Trauma; and Work. *See generally First Step Act: Initial Review of the SPARC-13 Needs Assessment System*, U.S. Department of Justice (March 2022).[4]

8. Upon arrival at his/her designated facility, different departments assess a prisoner's various needs areas. *See id.* at 8. Specifically, the Education Department assesses the Dyslexia, Education, and Work need areas. The Health Services Department assesses the Medical and Recreation/Leisure/Fitness needs. Unit Management assesses Substance Use and Finance/Poverty. The Psychology Services Department assess the prisoner's Mental Health and Trauma needs. Finally, the Anger/Hostility, Antisocial Peers, Cognitions, and Family/Parenting needs are all assessed by reliable and valid self-report instruments (respectively, the Brief Anger-Aggression Questionnaire, Measures of Criminal Attitudes and Associates, and Family Assessment Device-12), with further assessment by Psychology Services as necessary. *See id.* at 5-8.

---

[3] Available at https://www.bop.gov/inmates/fsa/docs/first-step-act-annual-report-april-2023.pdf.
[4] Available at https://www.bop.gov/inmates/fsa/docs/bop_fsa_needs_validation_report_2021.pdf.

9. After receiving individualized risk and needs assessments, the prisoner is then assigned to evidence-based recidivism reduction ("EBRR") programming and productive activities ("PAs") based on their identified risk and needs. *See* 18 U.S.C. § 3632(a)-(b).

**FSA Time Credits**

10. As an incentive to engage in programming, a prisoner shall earn 10 days of time credits for every 30-days of successful participation in EBRR/PAs. *See* 18 U.S.C. § 3632(d)(4)(A)(i).

11. Inmates deemed to be at a low or minimum risk of recidivism, and who, over two consecutive assessments, have not increased their risk of recidivism, shall earn 15 days of time credits for every 30-days of successful participation in EBRR/PAs. *See* 18 U.S.C. § 3632(d)(4)(A)(ii).

12. 28 C.F.R. § 523.41(c)(2) defines successful participation to require "a determination by Bureau staff that an eligible inmate has participated in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessments, and has complied with the requirements of each particular EBRR Program or PA."

13. Inmates will generally not be considered to be "successfully participating" in programming if they are: 1) in the Special Housing Unit for disciplinary reasons; 2) designated outside of the institution (e.g. in the hospital, on a furlough, etc.); 3) temporarily transferred to another government agency (e.g. on writ, for service of a state sentence, etc.); 4) placed in a mental health or psychiatric hold; or 5) "opting out" (i.e. choosing not to participate in recommended EBRR and PA). *See* 28 C.F.R. § 523.41(c).

14. Under BOP's time credit regulations, inmates automatically earn one day of programming credits for each day that passes, without regard to program completion or the number of hours actually spent in any particular program or activity, provided the inmate is compliant with 28 C.F.R. § 523.41(a) and does not fall within one of the categories enumerated in 28 C.F.R. § 523.41(c). In practice, this means inmates are not necessarily required to be participating in EBRR/PAs specifically assigned to them at any given time to earn credits. Rather, an inmate's needs must have been identified, and they must be able and *willing* (i.e. not "opting out," "choosing not to participate in recommended EBRR and PA," or otherwise not "successfully participating") to complete EBRR/PAs specifically assigned to the inmate by prison officials under the risk and needs assessment system.[5]

**Evidence-Based Recidivism Reduction Programming and Productive Activities**

15. The First Step Act, at 18 U.S.C. § 3635(3), defines an EBRR as:

    [E]ither a group or individual activity that-

    (A) has been shown by empirical evidence to reduce recidivism or is based on research indicating that it is likely to be effective in reducing recidivism;

    (B) is designed to help prisoners succeed in their communities upon release from prison; and

    (C) may include-

---

[5] As further clarification, inmates do not earn credit for participating in unassigned programming; rather, they earn time credits *but for* the reason that they have not refused ("opted-out of") any EBRRs and PAs assigned to them. See 28 C.F.R. § 523.41(c); *see also* Final Time Credit Rule, 2022 WL 159155. This subtle distinction becomes an important one in the context of this case where the Court is evaluating programming taken prior to a risk and needs assessment. Prior to a risk and needs assessment, BOP is unable to "determine the type and amount of evidence-based recidivism reduction programming that is appropriate for each prisoner and assign each prisoner to such programming accordingly, and based on the prisoner's specific criminogenic needs …." 18 U.S.C. § 3632(a)(3). As such, prison officials cannot yet determine that the inmate is complying with all EBRR and PAs assigned to them under the Risk and Needs Assessment System, which is the central predicate for receiving automatic time credits under the extremely inmate-friendly time credit regime BOP implemented in its Final Time Credit Rule, 2022 WL 159155 and 28 CFR § 523.41(c).

      i. social learning and communication, social learning and communication, interpersonal, anti-bullying, rejection response, and other life skills;
     ii. family relationship building, structured parent-child interaction, and parenting skills;
    iii. classes on morals or ethics;
    iv. academic classes;
     v. cognitive behavioral treatment;
    vi. mentoring;
   vii. substance abuse treatment;
  viii. vocational training;
    ix. faith-based classes or services;
     x. civic engagement and reintegrative community services;
    xi. a prison job, including through a prison work program;
   xii. victim impact classes or other restorative justice programs; and
  xiii. trauma counseling and trauma-informed support programs.

16. Similarly, the BOP's regulations provide:

> **Evidence-Based Recidivism Reduction (EBRR) Program**. An EBRR Program is a group or individual activity that has been shown by empirical evidence to reduce recidivism or is based on research indicating that it is likely to be effective in reducing recidivism; and is designed to help prisoners succeed in their communities upon release from prison. EBRR Programs may include, but are not limited to, those involving the following types of activities:
>
> (1) Social learning and communication, interpersonal, anti-bullying, rejection response, and other life skills;
> (2) Family relationship building, structured parent-child interaction, and parenting skills;
> (3) Classes on morals or ethics;
> (4) Academic classes;
> (5) Cognitive behavioral treatment;
> (6) Mentoring;
> (7) Substance abuse treatment;
> (8) Vocational training;
> (9) Faith-based classes or services;
> (10) Civic engagement and reintegrative community services;
> (11) <u>Inmate</u> work and employment opportunities;
> (12) Victim impact classes or other restorative justice programs; and
> (13) Trauma counseling and trauma-informed support programs.

28 C.F.R. § 523.41(a).

17. The FSA defines a productive activity to mean "either a group or individual activity that is designed to allow prisoners determined as having a minimum or low risk of recidivism to remain productive and thereby maintain a minimum or low risk of recidivating." 18 U.S.C. § 3635(5).

18. BOP regulations are slightly more liberal, in that they define a PA as "a group or individual activity that allows an inmate to remain productive and thereby maintain or *work toward achieving* a minimum or low risk of recidivism." 28 C.F.R. § 523.41(b) (emphasis added). Therefore, under BOP regulations, inmates who are deemed as a high or medium risk may still participate in PAs.

19. In 2019, the Office of the Deputy Attorney General, the BOP, the National Institute of Justice, and the Independent Review Committee reviewed all the programs offered at BOP facilities to determine which, under the FSA, could be considered EBRRs or PAs. *See The Attorney General's First Step Act Section 3634 Annual Report*, U.S. Department of Justice, p. 17 (December 2020), a true and accurate copy of which is attached hereto as **Exhibit A**.

20. In January 2020, the BOP published a list of then-approved approved EBRR/PAs, noting the featured programs were designed to address an inmate's need(s) and thus reduce their risk of recidivism. *See id.*[6]

21. In an effort to expand programming, the BOP called upon RSD to develop additional EBRR and PAs. *See id.* Additionally, recognizing that programs can come from sources outside the BOP, the agency also established a review process to consider externally

---

[6] The Report states: "Inmates may still participate in other services, programs, and activities, but such participation will not result in the earning of time credits." To clarify, the Report accurately states that inmates do not earn credit for participating in programs that are not recommended; rather, they earn credit *so long as* they are not refusing recommended programming or otherwise not "successfully participating."

submitted programs. *See id.* at 17-18. Thus, an independent, external, not-for-profit organization was engaged to develop and execute a review process that would assure fair and thorough consideration of each prospective program. *See id.* Among other things, the organization reviewed programs for evidence demonstrating effectiveness in reducing recidivism. *See id.*

22. As of April 2023, the BOP established clear procedures for evaluating and classifying a program as an EBRR/PA under 18 U.S.C. § 3635. For external programs, the independent organization referenced above reviews the prospective's submission to determine if (1) evidence of reducing recidivism is observed and (2) other BOP criteria, such as requirements for the program or specifications for delivery, relationship to criminogenic or other critical needs, and program costs/time, are met. *See Review of External Programs Submitted – General*, a true and accurate copy of which is attached hereto as **Exhibit B**. A final evidence rating is assigned to each proposal based on study design and outcome standards, and then summaries are created to help determine whether and how the proposed program would be used in BOP institutions. *See id.*; *see also First Step Act Annual Report,* U.S. Department of Justice, at p. 20 (April 2023), a true and accurate copy of which is attached hereto as **Exhibit C**. Of the five possible ratings, only "effective" and "promising" programs are considered for adoption and inclusion in the First Step Act Approved Programs Guide. *See* **Exhibit C** at 20.

23. Internal program proposals are submitted to RSD with supporting materials that include, at a minimum, a facilitator's guide, a complete curriculum, supporting research, and any handouts that will be provided to the participants. *See id.* Internal program proposals are evaluated for evidence of recidivism reduction. *See id.*

24. The current First Step Act Approved Programs Guide (January 2024), available on the BOP's public website, lists 95 programs that have been approved EBRR/PAs. A true and accurate copy of the First Step Act Approved Programs Guide, dated January 2024, is attached hereto as **Exhibit D**. The listed programs are standardized across institutions, implemented with dedicated resources, based on curriculum with fully developed and evaluated protocols, and reviewed on a regular basis to ensure program fidelity. *See id.* at 2.

25. The BOP continues efforts to expand its EBRR/PA offerings in a variety of ways, including engaging an outside consultant group to evaluate existing evidence-based recidivism reduction programs in correctional institutions outside BOP, adding new School Counselor positions and enhanced Career and Technical Education programs, and expanding the use of an institution's Special Populations Coordinator. The BOP's Approved Programs Guide is updated on at least a semi-annual basis as new EBRR/PAs are added.

26. Importantly, the Attorney General and BOP, using the process described above, determine whether any program meets the criteria for being an EBRR or PA under 18 U.S.C. § 3635. As noted above, the BOP collaborates with an independent, external, not-for-profit organization, to help the review process to consider externally submitted programs for potential inclusion on the approved EBRR/PA list. However, prison officials, under the Attorney General's direction, retain the ultimate responsibility for developing, classifying, and offering EBRR and PAs under the FSA.

27. It is also important to note that prison officials make available to inmates all kinds of programming, like certain online college classes, for example, that may be beneficial to

inmates but are not EBRR/PA offerings, which are only a subset of the programming available to inmates during their incarceration. As in this case, this can often cause confusion when inmates claim that certain programs are EBRRs or PAs when they are not.

**Petitioner's Programming**

28. Petitioner was sentenced to his current aggregated term of incarceration on April 28, 2023; he is not entitled to FSA time credits prior to that date. *See* 18 U.S.C. § 3632(d)(4)(B)(ii).

29. Petitioner was initially designated to the Federal Correctional Institution in Fort Dix, New Jersey ("FCI Fort Dix"), where he arrived on July 18, 2023. *See* Admission and Release History for Vitaly Borker, Reg. No. 64386-054, a true and accurate copy of which is attached hereto as **Exhibit E**.

30. Petitioner was physically housed at the Metropolitan Detention Center in Brooklyn, New York ("MDC Brooklyn"), a BOP-operated facility, from April 28, 2023 (date of sentencing), and July 18, 2023. *See* **Exhibit E**.

31. According to BOP records, Petitioner did not participate in any EBRRs or PAs between April 28, 2023, and July 18, 2023. In fact, it appears Petitioner did not participate in any programming at all between these dates.

   a) Attached hereto as **Exhibit F** is a true and accurate copy of the Education Transcript for Vitaly Borker, Reg. No. 64386-054. It indicates Petitioner did not participate in any programming between April 28, 2023, to July 18, 2023, nor was he on any waiting lists.

b) Attached hereto as **Exhibit G** is a true and accurate copy of the current Work History for Vitaly Borker, Reg. No. 64386-054. It indicates Petitioner did not participate in any programming between April 28, 2023, to July 18, 2023, nor was he on any waiting lists.

I declare under penalty of perjury and pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge.

Executed this _9_ day of May 2024

DARLA WOLF
Digitally signed by DARLA WOLF
Date: 2024.05.09 09:52:54 -04'00'

Darla Wolf
Education Administrator
Reentry Services Division