UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| VITALY BORKER, | ) | |
| Petitioner, | ) ) ) | |
| v. | ) ) | Civil No. 24-10045-LTS |
| WARDEN BOWERS, | ) ) ) | |
| Respondent. | ) ) | |

MEMORANDUM & ORDER ON PETITION
FOR WRIT OF HABEAS CORPUS (DOC. NO. 1)

May 15, 2024

SOROKIN, J.

Vitaly Borker, who is serving a sentence at the Federal Medical Center in Devens, Massachusetts, filed a pro se petition under 28 U.S.C. § 2241 claiming he has been unlawfully denied certain time credits available under the First Step Act ("FSA"). Doc. No. 1.[1] The respondent asked this Court to dismiss the petition, arguing the Bureau of Prisons ("BOP") had appropriately deemed Borker ineligible to accrue FSA time credits during the relevant period. Doc. No. 10. In a previous order, the Court denied the respondent's motion, appointed counsel to represent Borker, and directed the parties to confer and submit further briefing addressing the resolution of Borker's petition on its merits. See Doc. No. 20. Having now received and carefully considered those submissions, the Court ALLOWS Borker's petition.

---

[1] Citations to "Doc. No. __ at __" reference submissions appearing on the Court's electronic docket in this action, using the document and page numbers appended in the ECF header.

The procedural history that led to this action is not in dispute; it is described in the Court's prior Order and will not be repeated here. See id. at 1-3. The same Order also summarized the relevant provisions of the FSA—the statutory scheme under which Borker's claim arises. Id. at 3-5. Addressing the respondent's motion to dismiss, the Court determined that, pursuant to the plain language of the FSA, Borker was eligible to accrue time credits when his judgment of sentence entered, because he was already detained in a BOP facility at that time.[2] See id. at 5-9. The parties agree that, for present purposes, the Court's prior ruling means Borker became eligible to accrue FSA time credits on April 28, 2023. Doc. No. 24 at 2. The

---

[2] In so concluding, the Court explained that a BOP regulation suggesting otherwise—that is, postponing eligibility for FSA time credits for a person in Borker's position until after their transfer to the facility at which they will serve their sentence—"contravene[d] the intent of Congress as clearly expressed in the FSA." Doc. No. 20 at 5. This Court was not the first federal court to reach this conclusion. Indeed, the respondent has identified no decision in which any federal court, squarely confronted with the same issue, has evaluated the relevant FSA provision and BOP regulation and either approved or deferred to the view expressed in the regulation. To the contrary, multiple federal judges deemed the regulation invalid in decisions issued throughout the year leading up to the filing of Borker's petition. See id. at 7 (citing cases in which, between March and December 2023, district and magistrate judges in New Hampshire, Hawaii, and Washington rejected respondents' reliance on the same regulation after finding it conflicted with the plain language of the FSA). In all but one of those cases, that determination led the courts to grant habeas relief to the individual petitioners. See Doc. No. 28 at 3 n.1. A review of the dockets in those actions suggests the government filed an appeal in only one of them, and it voluntarily dismissed that appeal before briefing and resolution on the merits.
    Nevertheless, the regulation remains in effect, and the BOP apparently continues to apply it despite the "growing chorus of federal courts holding in unison that the regulation" is invalid. Id. at 9. The respondent ends his most recent submission by urging the Court not to "exceed [its] jurisdiction in this individual habeas petition" by granting "extraordinary and programmatic injunctive relief" in the form of an order requiring the BOP to "begin conducting [FSA] risk-and-needs assessments—and assigning [FSA programming]—earlier than it already does." Doc. No. 25 at 6. This concern presumably arises from BOP's continued adherence to a regulation that directly conflicts with the FSA, according to judges sitting in at least four different districts. It is telling that the government has sua sponte injected the topic of broad relief into this case. The Court has never suggested anything other than the prospect of relief tailored and limited to the petitioner before it, nor has Borker ever requested relief beyond the award of credits he urges he is individually due. For that reason alone, the Court will not now entertain broader relief.

2

parties further agree that, with their most recent round of briefing, the merits of Borker's petition are "fully briefed" and should be resolved "expeditiously."  Id.

Against this backdrop, the success of Borker's sole habeas claim depends on whether, under the FSA as the BOP (lawfully) has implemented it, he in fact accrued any FSA time credits between April 28 and July 18, 2023.[3]  The respondent, in a brief accompanied by declarations from two BOP representatives, urges that Borker's petition must be denied because "he does not claim that he successfully participated in any qualifying" FSA programming that would "warrant the habeas relief that he seeks."  Doc. No. 25 at 5; see Doc. No. 26 ¶ 31; Doc. No. 27 ¶ 7.  This position amounts to an end run around the plain language of the FSA.  It attempts to do indirectly (through policy and practice) what the BOP cannot do directly (through the regulation already deemed invalid by this Court and others).  The respondent's view essentially amounts to a Catch-22, which the Court cannot endorse.  According to the respondent, even if Borker was eligible to earn FSA time credits from the date of his sentencing (without waiting until his transfer, as the invalid BOP regulation would have provided), he could not actually earn any such credits at that time.  This is because the invalid regulation gave rise to a BOP policy and practice of waiting until after the transfer to a designated facility before undertaking the necessary risk-and-needs assessment and assignment of programming.  In other words, Borker could not earn credit until he was assessed, and he was not assessed until he was transferred, because the BOP (wrongly, by regulation and policy) treated that event as the one triggering eligibility under the FSA.

---

[3] The latter date is when Borker was transferred from a BOP detention center in New York to his first designated facility at Fort Dix, New Jersey.  Borker advances a distinct pair of challenges involving his accrual of time credits after July 18, 2023, in a separate habeas petition that is pending before this Court but is not yet fully briefed.  See Doc. Nos. 16, 29; Borker v. Bowers, No. 24-cv-11254 (D. Mass. May 10, 2024).

As Borker concisely and persuasively explains, see Doc. No. 28, the respondent's position (besides being unfair) is directly at odds with the Court's construction of the plain language of the FSA in this case. In denying the motion to dismiss, after explaining that "the FSA plainly requires that a prisoner 'shall' earn time credits at the rate described . . . after the person's 'sentence commences,'" Doc. No. 20 at 8 (quoting 18 U.S.C. § 3632(d)(4)(A)(i) and Yufenyuy v. Warden, FCI Berlin, 659 F. Supp. 3d 213, 217-18 (D.N.H. 2023)), the Court reasoned:

> The FSA requires that [Borker] be permitted to earn time credits when his judgment of sentence enters (as he is then already "in custody awaiting transport" to a designated facility), but the BOP's *regulation* prevents him from earning such credits until after his transport when he arrives at the designated facility. This contravenes the command of Congress, something the BOP cannot do.

Id. Precisely the same reasoning—if the word "regulation," italicized above, were replaced with "policy or practice regarding assessment and assignment of programming"—justifies rejecting the position the respondent urges now.

Moreover, the respondent's view is arbitrary and capricious in light of the declarations describing how the BOP generally calculates and awards time credits to prisoners it views as "eligible" for FSA purposes. As one declarant admits, the BOP has implemented the FSA by adopting an "extremely inmate-friendly time credit regime." Doc. No. 26 ¶ 14 n.5. For example, the BOP considers a prisoner to be "successfully participating" in FSA programming—and it permits the accrual of time credits—during periods when the prisoner is on a waitlist for (but not actively completing) such programming.[4] Doc. No. 12 ¶ 10 n.1. More importantly, the respondent's own submissions establish that, once the BOP has completed its FSA risk-and-

---

[4] If that were where the BOP drew the line, the respondent's position in this case might be rational. It appears undisputed that Borker was not on any waitlists during the relevant time period (because he had not yet been assessed and assigned any programming).

4

needs assessment, accrual of time credits is the rule rather than the exception. "Under BOP's time credit regulations, inmates <u>automatically</u> earn one day of programming credits for each day that passes, <u>without regard to program completion or the number of hours actually spent in any particular program or activity</u>," once their needs have been assessed. Doc. No. 26 ¶ 14 (emphasis added). "In practice, this means inmates are not necessarily required to be participating in [programming] specifically assigned to them at any given time to earn credits." <u>Id.</u> "Rather, [once] an inmate's needs . . . have been identified" by the BOP, he will earn FSA time credits <u>by default</u> so long as he is "able and <u>willing</u> (i.e. not 'opting out,' 'choosing not to participate in [programming],' or otherwise not 'successfully participating') to complete" programming. <u>Id.</u>

      Here, Borker has consistently alleged—and the respondent has not disputed—that he "worked productively as a unit orderly, never refused to participate in any programming or FSA risk assessments, attempted to access programming when available and maintained clear conduct." Doc. No. 1 at 7; Doc. No. 28 at 3. He was able and willing to complete programming. He opted out of nothing. Under the policy and practice just described, a "willing and able" prisoner like Borker would accrue FSA time credits <u>automatically</u> after the BOP's assessment process, even if he were not actually participating in, scheduled to begin, or waitlisted for any programming. The only obstacle preventing Borker from accruing credits in the same way during the pertinent period was BOP's practice of conducting assessments after arrival at a designated facility—even where the prisoner is in BOP custody and available for assessment at all relevant times. The timing of those assessments and the assignment of programming, of

5

course, is entirely within BOP's control.[5]  Furthermore, BOP's practice of waiting until after transfer to begin the assessments and assign programming is not separate from, but rather implements, the regulation the Court previously found violates the FSA.  Like the regulation at issue on the motion to dismiss, the Court finds the practice implementing it contravenes the language and intent of the FSA and is arbitrary and capricious as applied Borker.

The respondent seeks to minimize the effect of this practice here, suggesting Borker waited "only" a couple of months for his transfer and claiming the BOP did not "delay" the transfer.  Doc. No. 25 at 6.  None of this, however, avoids the fact that the regulation, policy, and practice at issue worked a violation of Borker's rights under federal law.  The violation persisted over a period of eighty-one days, during which Borker otherwise might have accrued (at least) twenty-seven days of time credit under the calculus set out in the FSA.[6]  To the extent the respondent believes the prospect of securing release nearly a month earlier is de minimis, the Court disagrees.

Accordingly, Borker's petition (Doc. No. 1) is ALLOWED.  The respondent is directed to recalculate Borker's FSA time credits to include his eligibility for such credits beginning on April 28, 2023, in accordance with this Memorandum and Order and consistent with the approach applied to prisoners post-assessment.  The respondent shall file a status report within seven days notifying the Court and Borker of the revised calculations.  Any objection by Borker

---

[5] Though part of the process is a self-assessment the prisoner must complete, nothing in the record suggests Borker was directed (or could have requested) to complete that portion of the process during the relevant time period, let alone that he refused to do so.

[6] This estimate assumes Borker would have earned time credit during that period at a rate of ten days for every thirty days of "programming credit."  18 U.S.C. § 3632(d)(4)(A)(i).  Insofar as Borker believes he is or was entitled to the higher rate another provision describes for prisoners with lower risk categories, such claims are not the focus of this petition.

to the respondent's implementation of this Memorandum and Order is due within seven days of the respondent's status report.

                                                SO ORDERED.

                                                /s/ Leo T. Sorokin
                                                United States District Judge